**Willie Lee HUDSON, Petitioner-Appellee,**

v.

**Ruth L. RUSHEN, Director of the California Department of Corrections, Respondent-Appellant.**

No. 81–4690.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1982.

Decided Sept. 9, 1982.

Kristofer Jorstad, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellant.

Michael S. McCormick, Deputy State Public Defender, San Francisco, Cal., for petitioner-appellee.

Before CHOY, SNEED, and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

Willie Lee Hudson, a California state prisoner, petitioned for a writ of habeas corpus alleging that the state trial court violated his right to effective assistance of

counsel as guaranteed by the Sixth Amendment to the United States Constitution by failing to inquire adequately into his reasons for moving to substitute counsel. The district court granted the petition. The State of California ("the State") appealed. We hold that, inasmuch as the state trial court's inquiry into the petitioner's dissatisfaction with his counsel, though brief, was sufficient under the circumstances to constitute "an adequate and fair hearing on [defendant's] motion," *United States v. Mills*, 597 F.2d 693, 700 (9th Cir. 1979), the petitioner received effective assistance of counsel. We reverse the grant of the writ of habeas corpus.

## FACTS

Petitioner Hudson was convicted after jury trial in San Francisco Superior Court of kidnapping, forcible rape, and forcible oral copulation, all committed while armed with a deadly weapon. He was also convicted of assault by means of force likely to produce great bodily injury, battery against a police officer, and resisting arrest. The California Court of Appeal reversed the conviction for resisting arrest and stayed the sentences on the kidnapping and assault counts pending completion of the sentence for forcible rape. The remainder of the judgment was affirmed, and petitioner's Sixth Amendment challenge was rejected. The California Supreme Court denied a hearing.

The facts underlying petitioner's constitutional claim are not in dispute. At the close of the prosecution's case, the Honorable Walter F. Calcagno (now deceased) dismissed the jury and entertained petitioner's motion for substitution of counsel. The Deputy San Francisco Public Defender appointed to the case, Mr. Ronald Wong, informed the court that a "breach of confidence" had developed between the petitioner and himself such that the petitioner no longer wished to be represented by him, that as a result petitioner would not take the stand in his own defense despite the advice of counsel, and that his testimony was "absolutely necessary" for his defense.

Judge Calcagno asked petitioner if he wished to make a statement. He replied that he did not feel he was being represented properly because Mr. Wong failed to ask the victim certain questions and that there were "a lot of things" that he had to prove his innocence. The court asked, "Is that your statement, sir?" The petitioner replied affirmatively. The court then began to rule, saying "The motion to withdraw—". However, the defendant interjected further, indicating that there was other evidence that he felt should be offered that was not being offered. The court then ruled that "The motion to withdraw, and this coming at the completion of People's case, the motion to withdraw is denied."[1]

1. The text of this exchange is reproduced in pertinent part below:

THE COURT: Let the record show that all the jurors have left, and let the record also show that Mr. Wong desired and indicated that he wanted this session out of the presence of the jury.

MR. WONG: I did, and I appreciate that, your Honor.

THE COURT: But this is in the presence of the defendant, his counsel, and the District Attorney, and this is in open court.

MR. WONG: After the last recess, at 3:00 o'clock, I was informed by Mr. Hudson, my client, that he no longer wished me to represent him, and in fact, that he was not going to take the stand in his own defense, and that is against the advice of counsel.

I believe that his testimony is absolutely necessary; however, I feel that at this time there is a breach of confidence between myself and Mr. Hudson, and he wished to state to the Court the reasons for terminating our relationship, as my client and I as his attorney.

THE COURT: (To the defendant:) Do you want to make a statement?

You can sit down, but go ahead.

THE DEFENDANT: I feel like I am not being represented properly because there were a lot of things I told him to ask that woman and he didn't ask her.

I can prove that I didn't kidnap her or rape her or rob her, and there are a lot of things that I have got to prove that I didn't kidnap or rape that woman.

THE COURT: Is that your statement, sir?

THE DEFENDANT: Yeah.

THE COURT: The motion to withdraw—

THE DEFENDANT: There are a lot of things that should be here that are not here—it should be here, but that it's not here, like for

To permit the petitioner and his counsel additional time to discuss their situation, the court adjourned until the following morning.

The next morning, before the jury was called in, petitioner informed the court through his attorney that he would not take the stand in his own defense, participate in the trial, or be present for the rest of the proceedings. A colloquy between the court and petitioner followed, during which petitioner insisted that he did not want Mr. Wong to represent him. Excerpt of Record at 216–19. Petitioner finally left the courtroom, entered the holding cell, yelled obstreperously at the court to the effect that his attorney was fired, and thereafter remained in his holding cell for the duration of the trial. Excerpt of Record at 218.

## I.

### APPLICABLE PRINCIPLES

■ In *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970), we held that to compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled prior to trial in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever. *Id.* at 1170. Thus, the state trial court's summary denial of a defendant's motion for new counsel without further inquiry violated the Sixth Amendment. The trial court must take the time to conduct such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern. *Id.* This substantially parallels the California rule articulated in *People v. Marsden*, 2 Cal.3d 118, 123–24, 84 Cal.Rptr. 156, 465 P.2d 44 (1970), that a trial

court must permit a defendant seeking a substitution of counsel after the commencement of the prosecution's case to specify the reasons for his request.

■ In evaluating a trial court's denial of a motion for new counsel, we consider a number of factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. Mills*, 597 F.2d 693, 700 (9th Cir. 1979). The California *Marsden* rule also requires the trial court to initiate a further hearing into defendant's reasons for requesting new counsel whenever the stated reasons for wanting substitute counsel, on their face, present substantial grounds for granting the motion or clearly call for further inquiry by the court. *People v. Culton*, 92 Cal.App.3d 113, 116–17, 154 Cal.Rptr. 672 (Cal.Ct.App.1979); *People v. Huffman*, 71 Cal.App.3d 63, 139 Cal.Rptr. 264 (Cal.Ct.App.1977).

## II.

### THE EXHAUSTION REQUIREMENT

■ On appeal from grant of the petition by the district court, the state argues that because the Ninth Circuit authorities cited by the district court were never considered by the California courts, which decided Hudson's Sixth Amendment claim under *Marsden*, Hudson has not exhausted his remedies under state law. State courts must normally be given the initial opportunity to pass upon and correct alleged viola-

---

instance her wig, that she was wearing, and my clothes.

That tells—my clothes tells a lot about this case, the clothes I was wearing that night, and her wig, that she was wearing.

THE COURT: The motion to withdraw, and this coming at the completion of People's case, the motion to withdraw is denied. Now what you and Mr. Hudson decide, as to his constitutional right, to either take the stand or the fact that he doesn't take the stand, and you have placed on the record your recommendation of such, but that is something that

the two of you, Mr. Wong and Mr. Hudson, that you will have to decide to do.

. . . .

THE COURT: Rather than placing you in a position where you would have to go forward with your case today—well, do you wish to make an opening statement?

I will adjourn the jury, and you can discuss this, as to whatever testimony you want to put on in your case, but I will adjourn until tomorrow morning, at 9:00 o'clock, and we can resume with the trial.

Excerpt of Record at 211–12.

tions of their prisoners' federal rights before a federal habeas court may review the claim. *Ex parte Royall*, 117 U.S. 241, 254–55, 6 S.Ct. 734, 741–42, 29 L.Ed. 868 (1886); *Picard v. Connor*, 404 U.S. 270, 276–78, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). All claims of a prisoner normally must have been presented to the state court before a habeas petition will be considered by a federal court. *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). It follows that the federal habeas court must not hear factual allegations that were not before the state courts, *see, e.g.*, *Schiers v. California*, 333 F.2d 173 (9th Cir. 1964), nor hear cases in which an intervening change in federal law has cast the legal issue in a fundamentally different light, *see, e.g.*, *Blair v. California*, 340 F.2d 741 (9th Cir. 1965). The exhaustion requirement is satisfied, however, when the federal claim has been fairly presented to the state courts. *Picard v. Connor*, 404 U.S. at 275–76, 92 S.Ct. at 512–13.

 We find that petitioner's Sixth Amendment claim was exhausted under state law when the California Court of Appeal decided it adversely to him and the California Supreme Court denied a hearing. On the record before it, the state court had a fair opportunity to consider the claim and to correct the asserted constitutional defect in the petitioner's conviction. *See Picard*, 404 U.S. at 276, 92 S.Ct. at 512. While the state must have the opportunity to pass upon petitioner's constitutional claim, exhaustion of remedies does not require that the state have had the opportunity to pass on the claim under the particular authorities advanced in the federal habeas court. *Brown v. Craven, supra*, and *United States v. Mills, supra* offer an alternative formula-

tion of the standard governing the appropriate exercise of trial court discretion in ruling on motions to substitute appointed counsel. The basic question, whether the district court abused its discretion and deprived petitioner of his constitutional rights in denying the motion to substitute, is the same.[2] The exhaustion requirement does not bar admission to the federal courts until the state courts have explicitly considered every relevant federal case.

The State also argues that even if petitioner has exhausted his state remedies, he is not entitled to relief on habeas because the Ninth Circuit requirement of an expanded inquiry by the trial court into the reasons for a motion to substitute counsel under the Sixth Amendment is a "procedural rule" not made applicable to the states by the Fourteenth Amendment. This argument is without merit. *See Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970) (applying Ninth Circuit rule to state trial court conviction on habeas). Moreover, as we held in rejecting the State's exhaustion of remedies argument, the state and federal standards are essentially similar.

## III.

### EFFECTIVENESS OF REPRESENTATION

The true ground on which this case is fought is whether the court's inquiry constituted an adequate and fair hearing on defendant's motion. The district court in granting the petition relied on our decision in *Slappy v. Morris*, 649 F.2d 718 (9th Cir. 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 1748, 72 L.Ed.2d 160 (1982), and held that the trial court "did not make enough of an inquiry into the merits of defendant's

---

2. This distinguishes the instant case from *Blair v. California*, 340 F.2d 741 (9th Cir. 1965). There the petitioner contended that the California District Court of Appeal deprived him of a constitutional right by denying his request that counsel be appointed to assist him on his appeal from the judgment of conviction. The District Court of Appeal ruled adversely to petitioner prior to the decision of the United States Supreme Court in *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811

(1963), which first accorded constitutional standing to the right to counsel on appeal from a state conviction. *Blair*, 340 F.2d at 743. We required petitioner to first pursue his post-*Douglas* remedy in state court. *Id.* at 744. The Supreme Court had changed federal law in a way that cast the legal issue in a fundamentally different light. Such is not the case with the Ninth Circuit authorities cited by petitioner here.

motion to be able to adequately exercise the discretion vested in him." Excerpt of Record at 447. In *Slappy* we granted the writ where the state trial court denied defendant's motion for continuance so that the public defender originally appointed to the case, then absent with appendicitis, could continue to represent him. We held that, by failing to inquire about the probable length of the public defender's unavailability, the state trial court had not balanced properly the defendant's constitutional right to counsel against the interest of society in the prompt administration of justice. *Slappy*, 649 F.2d at 721–22.

We approach this case differently. Our focus is upon whether the state trial court's action was proper after evaluating the factors of timeliness of the motion, the adequacy of the court's inquiry, and the extent of the conflict between defendant and his counsel. *Mills*, 597 F.2d at 700. Two facts greatly impress us. The first is that the motion to substitute counsel came at the close of the prosecution's case and to grant it would have required either a significant delay or a mistrial. *See* Excerpt of Record at 217. The second is that the court's inquiry, rather than being insufficient as the district court holds, was as comprehensive as the circumstances reasonably would permit. It is true the state trial court could have asked the defendant a series of pointed questions that inevitably would have resembled cross-examination regarding the validity of his defense. However, we are convinced after reading the transcript of the state trial that the trial court knew what the defendant's defense was, that trial counsel had consulted sufficiently with the defendant, that trial counsel was prepared, and that his advice to the defendant to testify was not aberrational. *See Marsden*, 2 Cal.3d at 123, 84 Cal.Rptr. 156, 465 P.2d 44. We acknowledge that the trial court did not state these views on the record; however, our review for habeas purposes permits us to employ such conclusions as are reasonably inferrable from the record as a whole.

The record explicitly reveals that, unlike the summary denial in *Brown v. Craven*, 424 F.2d at 1169, the court convened a session out of the presence of the jury at which defendant's complaint was aired. The court invited defendant to make a statement, listened to defendant's reasons for desiring new counsel, and found them to be without merit. Nonetheless, the court did not require counsel to go forward with the case, but adjourned the trial until the following morning so that defendant and defendant's counsel would have an opportunity to confer. Excerpt of Record at 212. The following morning defendant's counsel indicated that the defendant's position was unchanged and, furthermore, that the defendant refused to participate further in the trial. The court advised defendant to cooperate with his counsel and urged his participation, but its efforts were thwarted by defendant's obstreperous departure from the courtroom. Excerpt of Record at 218. Only then did the communication between the defendant and his counsel break down completely. The reason for this complete breakdown was the voluntary conduct of defendant, not any failure by the trial court to adequately inquire into the reasons for the conflict. *Cf. People v. Brown*, 26 Cal. App.3d 825, 835, 102 Cal.Rptr. 518 (Cal.Ct. App.1972) (retrial and appeal of *Brown v. Craven* petitioner) (defendant's lack of confidence in his attorney a product of his own obstinance, recalcitrance, and unreasonable contumacy). An obstreperous departure from the courtroom should not be passed over lightly in determining the extent to which constitutional rights have been infringed. *Cf. Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (disruptive behavior can justify loss of a right to be present at trial); *United States v. Ives*, 504 F.2d 935, 939–46 (9th Cir. 1974) (disruptive behavior can result in loss of defendant's right to testify), *vacated*, 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975), *reinstated in part and vacated in part*, 547 F.2d 1100 (9th Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977).

This case is not like *Brown*. There the court found that "it was not unreasonable to believe that had [defendant] been repre-

sented by counsel in whom he had confidence he would have been convicted, if at all, of no more than [a much lesser offense]." *Brown*, 424 F.2d at 1170. Here it is not reasonable to so believe. Nor is this case like *Slappy*. There the substitution of counsel would have been substantially less wasteful of public resources than would have been substitution in this case. The interests of the "prompt and efficient administration of justice" weigh far more heavily in this case than in *Slappy*. 649 F.2d at 721. Also in *Slappy* the counsel the defendant sought had previously served the defendant and in that capacity had investigated the case. 649 F.2d at 719. Here the defendant merely wanted someone other than Mr. Wong. A previous association such as existed in *Slappy* obviously weighs heavily in the defendant's favor when a continuance to obtain the services of the prior counsel is sought. No such weight on the defendant's side of the scale exists in this case.

The only such weight is the defendant's loss of confidence in Mr. Wong which the record indicates was in good faith. We do not read *Slappy* as holding that such a loss of confidence requires the conclusion that a defendant is no longer represented by counsel. To have so held would have made a continuance turn only on the good faith of the defendant in asserting a loss of confidence. *Slappy* makes clear that the defendant's constitutional right of counsel must be balanced against the interest of society in prompt and efficient administration of justice. 649 F.2d at 721. To resolve the issue entirely on the defendant's good faith eliminates a balancing of interests. Loss of confidence by the defendant in his counsel weighs heavily in the defendant's favor when he seeks to substitute counsel; but it is not controlling.

The line between cases such as *Brown*, *Slappy*, and this case, on the one hand, and those in which the issue is ineffective assistance of counsel, on the other, is sometimes unclear. Logic alone dictates that the greater the hostility between the defendant and his counsel, the longer the duration of the rupture in relations between the two, the less communication there is between them, and the more ineffective the counsel's performance appears, the more likely it is that the case will be analyzed in terms of whether the defendant was represented by counsel. If so analyzed, a conclusion that no counsel existed invokes the full force of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). If instead the conclusion is that representation did exist, the issue then becomes whether the defendant received such ineffective assistance of counsel as to prejudice his defense. We have discussed this line between no-counsel cases and ineffective counsel cases previously. *See Cooper v. Fitzharris*, 586 F.2d 1325, 1331–33 (9th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); *Slappy, supra*, 649 F.2d at 722–23. We adhere to those discussions.

Having concluded, in effect, that the defendant in this case had counsel, we have considered the record from the standpoint of whether a substitution should have been allowed on the ground that defendant's counsel was ineffective. We find that no basis for such an order existed. Mr. Wong represented the petitioner effectively.

The order granting the writ of habeas corpus is reversed.

REVERSED.