Daniel Eugene **FRAZER,**
Petitioner–Appellant,

v.

**UNITED STATES of America,**
Respondent–Appellee.

No. 92–55193.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1993.

Decided March 10, 1994.

Kenneth M. Stern, Woodland Hills, California, for the petitioner-appellant.

Mark D. Larsen, Assistant United States Attorney, and Peter G. Spivack, Assistant United States Attorney, Los Angeles, California, for the respondent-appellee.

Before: BROWNING, BEEZER, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

I

A.

On June 21, 1988, Daniel Eugene Frazer was charged in a superseding indictment with fifteen counts of bank robbery in violation of 18 U.S.C. § 2113(a). Because he was indigent, an attorney was appointed to represent him.

On advice of appointed counsel, Mr. Frazer waived his right to a trial by jury, and the case was tried to the court on stipulated facts. He was convicted of eight counts and sentenced to a twenty-year term of imprisonment.

Mr. Frazer filed, but later abandoned, an appeal. Subsequently, and for substantial assistance to the Government, his sentence was reduced to fifteen years under Federal Rule of Criminal Procedure 35.

B.

On May 2, 1991, Mr. Frazer filed a pro se motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He alleged *inter alia* that his appointed trial attorney had failed to provide for him the assistance to which he was entitled under the Sixth Amendment. Specifically, Mr. Frazer claimed in his motion that his appointed trial attorney had called him a "stupid nigger son of a bitch and said he hopes I get life. And if I continue to insist on going to trial I will find him to be very ineffective." Moreover, Mr. Frazer claimed that two deputy United States Marshals overheard his attorney's alleged outburst and advised him to get a new lawyer. Mr. Frazer alleges he tried to do so within the hour, but was rebuffed by the district court. Mr. Frazer also alleged that his appointed trial attorney refused to collect information that would have been helpful in mitigating his sentence.

Mr. Frazer's Sixth Amendment legal argument, tendered in his Response to the Government's Opposition to his § 2255 motion, was as follows: "When counsel refers/calls its client 'a stupid nigger son of a bitch' and promisses [sic] to be ineffective if Petitioner continues to insist upon going to trial rather than plead as counsel insisted a serious conflict exist [sic]." As authority for his argument, he invoked the duty of loyalty owed by an attorney to his client and cited *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

C.

Mr. Frazer's pro se request for relief was denied by the district court on the basis of a recommendation from a magistrate judge. Without holding an evidentiary hearing, the magistrate judge had rejected Mr. Frazer's allegations of a fatal defect in the manner in which he had been treated by his appointed trial attorney. The magistrate judge dismissed Mr. Frazer's claims of racial bias as "conclusory allegations ... unsupported by any facts." The magistrate judge also believed the record demonstrated that trial counsel's actual representation of Mr. Frazer did not demonstrate "any errors in preparing for trial or in presenting a defense," i.e., no prejudice. Thus, no evidentiary hearing was deemed necessary.

Now represented by different counsel, Mr. Frazer appeals. His primary allegation is that the district court abused its discretion in failing to hold an evidentiary hearing on

whether his Sixth Amendment right to counsel at trial was violated.[1]

## D.

■■■■ We review de novo both the denial of a § 2255 motion and a determination that the prisoner was not denied his Sixth Amendment right to counsel. *United States v. Moore,* 921 F.2d 207, 209 (9th Cir.1990); *United States v. Birtle,* 792 F.2d 846, 847 (9th Cir.1986). The prisoner is entitled to an evidentiary hearing on his claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (1988). We review for an abuse of discretion the district court's failure to hold an evidentiary hearing under § 2255, but "[w]hen a defendant's allegations ... are based on facts outside of the record, an evidentiary hearing is required." *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990) (citing *United States v. Espinoza,* 866 F.2d 1067, 1069 (9th Cir.1988)), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1398, 113 L.Ed.2d 454 (1991). An exception to this mandatory requirement exists when the issue of the prisoner's credibility can be " 'conclusively decided on the basis of documentary testimony and evidence in the record.' " *Espinoza,* 866 F.2d at 1069 (quoting *Watts v. United States,* 841 F.2d 275, 277 (9th Cir.1988)); *see also Blackledge v. Allison,* 431 U.S. 63, 75–76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977) (vague or palpably incredible or frivolous allegations warrant summary dismissal of a petition for habeas corpus). We have jurisdiction over this timely appeal under 28 U.S.C. § 2255, and we reverse.

## II

### A.

The government forthrightly conceded at oral argument that in measuring for an abuse of discretion the district court's decision not to conduct an evidentiary hearing on Mr. Frazer's Sixth Amendment claim, we must accept arguendo Mr. Frazer's allegations against his appointed trial attorney as true. We then ask whether these allegations, if proved, would entitle him to the relief he seeks. *See United States v. Hearst,* 638 F.2d 1190, 1194 (9th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981). We emphasize that no finding has yet been made supporting Mr. Frazer's claims. Our duty is to decide only whether he must be given an opportunity in the form of an evidentiary hearing to attempt to prove his allegations.

### B.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const.Amend. VI. This right has come to be regarded as a sine qua non of our criminal justice system. In 1938, the Supreme Court said:

> [T]he Assistance of Counsel ... is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.... The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not "still be done."

*Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938).

Six years earlier, Justice Sutherland had described the importance of this right as follows:

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad.... He requires the *guiding hand* of counsel at every step of the proceedings against him.

*Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) (emphasis added).

For these reasons, the Court held in *Johnson v. Zerbst* that in federal courts, counsel must be provided free of charge for defen-

---

1. To avoid any possibility of misinterpretation of the scope of our holding, we note that this case involves only the right to counsel at trial. It is not intended to extend that right to other contexts where it currently does not exist. *See Coleman v. Thompson,* 501 U.S. 722, ——, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991).

dants unable to employ counsel on their own, unless this right is competently and intelligently waived. The Court said, "Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential *jurisdictional prerequisite* to a federal court's authority to deprive an accused of his life or liberty." *Johnson v. Zerbst*, 304 U.S. at 467, 58 S.Ct. at 1024 (emphasis added). Moreover, the Court has assigned a "special value" to this right: " 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.' " *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984) (quoting Schaefer, *Federalism and State Criminal Procedure*, 70 Harv.L.Rev. 1, 8 (1956)). Justice Black has described the right to counsel as invested with a "peculiar sacredness." *Avery v. Alabama*, 308 U.S. 444, 447, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). In this vein, the Court has held that the deprivation of the right to counsel is so inconsistent with the right to a fair trial that it can never be treated as harmless error. *Chapman v. California*, 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)).

■ The right to counsel guaranteed by the Constitution, however, means more than just the opportunity to be physically accompanied by a person privileged to practice law. *See Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) ("That a person who happens to be a lawyer is present at the trial alongside the accused ... is not enough to satisfy the constitutional command."); *Powell v. Alabama*, 287 U.S. at 58, 53 S.Ct. at 60 (indigent defendants provided with unprepared and pro forma lawyers "were not accorded the right to counsel in any substantial sense"). Thus, "[a]n accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063. In other words, the assistance to which a defendant is entitled

must be "effective," *id.* at 686, 104 S.Ct. at 2064, unhindered either by the state or by counsel's Constitutionally deficient performance. This required performance contemplates open communication unencumbered by unnecessary impediments to the exchange of information and advice. *See Javor v. United States*, 724 F.2d 831, 834 (9th Cir.1984) (a defendant's Sixth Amendment right to counsel is denied when his attorney sleeps through a substantial portion of the trial); *see also Tucker v. Day*, 969 F.2d 155, 159 (5th Cir.1992) (an attorney who provided his client with no assistance at sentencing and who said, "Oh, I am just standing in for this one," did not satisfactorily discharge his Sixth Amendment responsibilities).

■ Appointed counsel also owes the client a duty of loyalty. This "duty of loyalty" has been described as "perhaps the most basic of counsel's duties." *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. As such, this duty prohibits a defense attorney from telling a jury that "it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute." *United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir.1991). In *Swanson*, we held that a defense attorney who so advises a jury "has utterly failed to 'subject the prosecution's case to meaningful adversarial testing.' " *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984)). In so holding, we cited with approval the Tenth Circuit's holding that " 'an attorney who adopts and acts upon a belief that his client should be convicted "fail[s] to function in any meaningful sense as the Government's adversary." ' " *Id.* (quoting *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir.1988) (quoting *Cronic*, 466 U.S. at 666, 104 S.Ct. at 2051)).

We have also joined the Tenth Circuit in holding that an attorney who abandons his duty of loyalty to his client may by so doing create a conflict of interest:

A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or death sentence suffers from an obvious conflict of interest. Such an attorney, like

unwanted counsel, " 'represents' the defendant only through a tenuous and unacceptable legal fiction." *Faretta v. California*, 422 U.S. 806, 821 [95 S.Ct. 2525, 2534, 45 L.Ed.2d 562] (1975). In fact, an attorney who is burdened by a conflict between his client's interests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant are necessarily in opposition.

*Id.* at 1075 (quoting *Osborn*, 861 F.2d at 629); *see also Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."); *Holloway v. Arkansas*, 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978).

Nevertheless, the Supreme Court in fleshing out the contours of the Sixth Amendment right to counsel has held that it does not guarantee "a right to counsel with whom the accused has a 'meaningful attorney-client relationship.' " *Morris v. Slappy*, 461 U.S. 1, 3–4, 103 S.Ct. 1610, 1612–13, 75 L.Ed.2d 610 (1983); *see id.* at 13–14, 103 S.Ct. at 1617–18. To understand the dimensions of this limitation, one must look at the facts of that case.[2]

In *Morris*, an indigent defendant had a unilateral falling out with his attorney caused not by any identifiable objective misconduct by the attorney, but by (1) Morris's dissatisfaction with a switch from one public defender to another, (2) Morris's opinion that the new public defender had not had enough time to prepare for trial, and (3) by the second public defender's assessment that Morris had no "defense to [the] charges." *See* 461 U.S. at 8, 103 S.Ct. at 1614. Because of this unilateral falling out, Morris refused to participate in his own defense. In affirming the denial by the district court of Morris's petition for a writ of habeas corpus, the Court rejected Morris's claim that a defendant has the right to a certain "rapport" with his attorney. *Id.; see United States v. Schaff*, 948 F.2d 501, 505 (9th Cir.1991).

■ Moreover, an indigent defendant does not have the right to " 'an attorney he cannot afford.' " *Caplin & Drysdale v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 2651, 105 L.Ed.2d 528 (1989) (quoting *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988)).

## III

### A.

■ If the Sixth Amendment itself protects an accused from a lawyer with a traditional conflict of interest, and from a lawyer who is asleep, completely disinterested, or so unprepared that his appearance is merely pro forma, surely it must protect the indigent from an appointed lawyer who calls him to his face a "stupid nigger son of a bitch" and who threatens to provide substandard performance for him if he chooses to exercise his right to go to trial. An indigent defendant may not be entitled to a meaningful relationship as described in *Morris*, but a verbal assault manifesting explicit racial prejudice and threatening to compromise the client's rights far exceeds and transcends the facts and holding in that case. In our judgment, such a verbal assault is irreconcilable with (1) the duty of loyalty owed a client by his attorney, (2) the responsibility of providing meaningful assistance, and (3) the role of "guiding hand" described in *Powell* by Justice Sutherland. *All* advice, assistance, and guidance provided after such an outburst would be fatally suspect, as would the "willingness" of a defendant to follow the attorney's lead. Such a disrespectful and inappropriate eruption would signal and be tantamount to (unless somehow cured) a "total lack of communication" far exceeding the parameters of any duty on the part of counsel to deliver to his client a "pessimistic prognosis" of his legal position. *United*

---

**2.** In his opening brief Mr. Frazer's counsel relied heavily on our opinion in *Slappy v. Morris*, 649 F.2d 718 (9th Cir.1981) without bringing to our attention that we were explicitly overruled by the Supreme Court on the point for which he cited it. Not until the government cited the Supreme Court's overruling opinion did counsel acknowledge the subsequent history of this case. Counsel's use of precedent in this fashion is most disconcerting.

States v. Rogers, 769 F.2d 1418, 1424 (9th Cir.1985); see also United States v. Walker, 915 F.2d 480, 485 (9th Cir.1990) (a total lack of communication results in ineffective assistance of counsel). Compare Schaff, 948 F.2d at 504–05 (vigorous advocacy by counsel of a plea bargain does not necessarily result in a total lack of communication).

To hold otherwise in this case would reduce a sacred right to worse than a sham. It would be astonishing to hold that the Sixth Amendment right to appointed counsel is satisfied by the provision of an attorney who explicitly assaults his client with racial slurs and makes threatening and improper statements to the client capable of overriding the client's own judgment as to how he should exercise his various rights. What stands out in this case in contrast to Morris is counsel's alleged abhorrent, confrontational behavior, including his alleged threat to Mr. Frazer to deny him the assistance to which he was entitled. No such behavior was present in Morris. In that case, Morris had no cognizable or legitimate reason to refuse to cooperate with his counsel or to participate in the trial.

Our conclusion is compelled by the collective teachings of Powell, Johnson, Gideon, and particularly by Justice Black's description in Von Moltke v. Gillies of appointed counsel's unique role:

> The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client.... Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision. And nowhere is this service deemed more honorable than in case of appointment to represent an accused too poor to hire a lawyer, even though the accused may be a member of an unpopular or hated group, or may be charged with an offense which is peculiarly abhorrent.

332 U.S. 708, 725–26, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948) (plurality) (footnote omitted).

■ We will not tolerate the deliberate exclusion of blacks from grand juries because discrimination on the basis of race in the selection of grand jurors "strikes at the fundamental values of our judicial system and our society as a whole." Rose v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979). Nor will we permit counsel to use a peremptory challenge to strike a black juror because of that juror's race. Batson v. Kentucky, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). "Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.'" Id. at 87–88, 106 S.Ct. at 1718 (quoting Strauder v. West Virginia, 100 U.S. 303, 308, 25 L.Ed. 664 (1880)). To countenance the type of overt racially charged threat alleged in this case would be to deviate from our national goal of ending racism.

■ Accordingly, we hold that the facts as alleged in this case, if proved, would render so defective the relationship inherent in the right to trial counsel guaranteed by the Sixth Amendment that Mr. Frazer would be entitled to a new trial with a different attorney. It follows as night the day that he has demonstrated a right to an evidentiary hearing on this issue, and that the denial of such a hearing in the district court constituted an abuse of discretion. The magistrate's statement that Mr. Frazer's allegations are "conclusory" and "unsupported by any facts" is manifestly erroneous, as is the government's argument in its brief that Mr. Frazer's claims are "mere folderol." Moreover, as we have pointed out, Mr. Frazer claimed he had two government witnesses who corroborate his claims. Because all of these factual allegations were outside the record, this claim on its face should have signalled the need for an evidentiary hearing.

Our conclusion is informed by our duty as judges to ensure that the right to counsel, as a jurisdictional prerequisite to depriving a person of his or her liberty, is fully honored. As stated by Justice Black, "where denial of the constitutional right to assistance of counsel is asserted, its peculiar sacredness demands that we scrupulously review the rec-

ord." *Avery v. Alabama,* 308 U.S. 444, 447, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940) (footnotes omitted). Moreover, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings *appear fair* to *all* who observe them." *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988) (emphasis added).

### B.

■ Inherent in our analysis is our conviction that the Sixth Amendment defect in this case would be so egregious if proved that "a presumption of prejudice [would be] appropriate without inquiry into the actual conduct of the trial." *Cronic,* 466 U.S. at 660, 104 S.Ct. at 2047. As we reiterated in *Swanson,* " '[T]he Supreme Court created an exception to the *Strickland* standard for ineffective assistance of counsel [which normally requires a showing of prejudice] and acknowledged that certain circumstances are so egregiously prejudicial that ineffective assistance of counsel will be presumed.' " *Swanson,* 943 F.2d at 1072 (quoting *Stano v. Dugger,* 921 F.2d 1125, 1152 (11th Cir.1991) (en banc)). In our judgment, this case falls squarely into the exception described in *Swanson.* The alleged statements of counsel in this case are too extortionate to qualify as the "assistance of counsel" required by the Constitution. *See Holloway v. Arkansas,* 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978) (prejudice presumed where a defendant's attorney labors under a conflict of interest); *Tucker v. Day,* 969 F.2d 155, 159 (5th Cir.1992) (prejudice presumed where an attorney merely "stood in" during sentencing); *Lozada v. Deeds,* 964 F.2d 956, 958 (9th Cir.1992) (prejudice presumed where an attorney fails to advise his convicted client of his right to appeal); *Javor v. United States,* 724 F.2d 831, 834–35 (9th Cir.1984) (prejudice presumed where an attorney slept through portion of trial).

■ It could not be said in the light of such a proved outburst that counsel was acting " 'in the role of an advocate.' " *Cronic,* 466 U.S. at 656, 104 S.Ct. at 2045 (quoting *Anders v. California,* 386 U.S. 738, 743, 87

S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967)). Such behavior completely destroys and negates the channels of open communication needed for the relationship to function as contemplated in the Constitution. It is the client's right to expect that his "lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation on the client's behalf." *Thomas v. Municipal Court,* 878 F.2d 285, 289 (9th Cir. 1989).

As a nation we have acted decisively to remove all vestiges of racial discrimination from our lives. Not for a moment will we tolerate racist behavior in our workplaces, schools, voting booths, and public accommodations and offices. With these accomplishments as well as the aspirations of our nation firmly in mind, we can discern no reason whatsoever requiring us to tell an accused too poor to hire an attorney to protect his rights that he must not only prove that his government-appointed attorney verbally assaulted him with racist threats, but that to obtain relief he must show some prejudice over and above such an inexcusable tirade. The improbability of such an outburst occurring between a retained counsel and his client bolsters our analysis. The per se rule we adopt today may cost the government a conviction, but to hold otherwise would carry with it the unaffordable cost of tolerating what our Constitution and our laws tell us is intolerable.

### *Conclusion*

Because we decide this case based on allegations rather than findings of fact, our opinion is necessarily conditional. Should the government continue to resist, Mr. Frazer shall now have the opportunity to demonstrate the truth of his allegations. Unless and until he does so, no stigma should attach to his previous trial attorney.

We note from his paperwork that Mr. Frazer is primarily interested in being resentenced with the assistance of a different attorney rather than contesting his guilt. These are matters best sorted out in the

district court when he has new appointed counsel.

REVERSED and REMANDED.

BEEZER, Circuit Judge, concurring:

I concur in the judgment of the court.

If Frazer's appointed trial attorney threatened to render ineffective assistance of counsel in the event that Frazer did not plead guilty, then I would presume prejudice. If prejudice is presumed then there is no need to determine whether the attorney's conduct affected the trial's outcome. Frazer pleads such a case and he is entitled to an evidentiary hearing.

Frazer also claims to be the victim of a racially explicit verbal assault from his attorney. He claims that this establishes an "irreconcilable conflict" between attorney and client which prevented an adequate defense. The question whether an alleged racial slur, by itself, violates the Sixth Amendment is not properly resolved by the presumed prejudice standard.

There are three possible standards under which we determine whether an ineffective assistance claim constitutes a Sixth Amendment violation. A fourth standard is applied when the defendant claims an "irreconcilable conflict" with the attorney and seeks substitution of counsel. Under this fourth standard, the denial of substitution may violate the Sixth Amendment.

## I

Since the standard varies depending on the nature of petitioner's proof and the district court's findings of fact, I discuss the several standards.

### A

The Sixth Amendment guarantee of assistance of counsel comprises two correlative rights: the right to counsel of reasonable competence, and the right to counsel's undivided loyalty. *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir.1988). Where ineffective assistance of counsel is claimed, the claim is evaluated under the standard announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard is usually expressed as requiring two elements: the defendant in a criminal case must (1) show that counsel's actions were "outside" the range of professional conduct, and (2) that but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 687, 104 S.Ct. at 2064. Scrutiny under the first element is highly deferential, because there is a "strong presumption" that an attorney's conduct was professionally competent. *Id.* at 689, 104 S.Ct. at 2065. Scrutiny under the second element requires the petitioner to show a probability of prejudice— that the error undermined confidence in the trial's outcome. *Id.* at 694, 104 S.Ct. at 2068.

### B

Some errors by counsel are so egregious, however, that a second standard applies in such cases. Under this second standard, the defendant need not demonstrate that the error affected the reliability of the trial's outcome. *United States v. Cronic*, 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984); *United States v. Swanson*, 943 F.2d 1070, 1072 (9th Cir.1991). Instead, a *per se* presumption of prejudice arises. The presumption applies when the error involves actual or constructive denial of counsel during a critical stage of the proceedings or where counsel fails to subject the government's case to adversarial testing. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047; *Strickland*, 466 U.S. at 702, 104 S.Ct. at 2072 ("Actual or constructive denial of assistance of counsel altogether is legally presumed to result in prejudice.") *Toomey v. Bunnell*, 898 F.2d 741, 744 n. 2 (9th Cir.1990) (lack of adversarial testing gives rise to *per se* presumption). *See, e.g., Swanson*, 943 F.2d at 1074 (holding that lawyer who informed jury that no reasonable doubt exists "utterly failed" to subject prosecution's case to adversarial testing and, therefore, counsel provided ineffective assistance). We have applied the *per se* presumption "very sparingly" and only on those occasions when, either through denial of counsel or lack of adversarial testing, there has been an "actual breakdown in the adversarial process" during a critical

stage in the criminal proceedings. *Toomey,* 898 F.2d at 744 n. 2.

## C

A third standard applies when the attorney's undivided loyalty is questioned by a conflict of interest. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Under the *Cuyler* standard, an alleged conflict of interest is subjected to a "similar, though more limited, presumption of prejudice" than the *per se* presumption. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. Prejudice is presumed only if the defendant demonstrates that counsel (1) "actively represented conflicting interests" and (2) the "actual conflict of interest affected his lawyer's performance." *Id.* (quoting *Cuyler v. Sullivan,* 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718). To meet the second element, a client must plead and prove that the conflict had an adverse effect on counsel's conduct or caused some lapse in counsel's representation that is contrary to the client's interest. *See United States v. Miskinis,* 966 F.2d 1263, 1268 (9th Cir.1992) (defendant must show that conflict "affected his lawyer's performance" before prejudice may be presumed); *Wilson v. Mintzes,* 761 F.2d 275, 287 (6th Cir.1985) (defendant must show that conflict caused "some lapse in representation contrary to the defendant's interests") (quoting *Sullivan v. Cuyler,* 723 F.2d 1077, 1086 (3rd Cir.1983)).

The showing of some adverse consequence is not the same as prejudice but is necessary before prejudice can be presumed. Prejudice requires a probability that the outcome of trial would have been different. In contrast, an adverse consequence requires a likelihood that counsel's performance somehow would have been different. *See Miskinis,* 966 F.2d at 1268; *Thomas v. Foltz,* 818 F.2d 476, 480 n. 3 (6th Cir.1987). To establish that a conflict of interest adversely affected counsel's performance, the defendant must show that the conflict "likely" affected counsel's conduct of particular aspects of the trial or counsel's advocacy on behalf of the defendant. *Miskinis,* 966 F.2d at 1268. This showing of some adverse consequence is necessary because an attorney may harbor a conflict but nevertheless provide exemplary representation. Without a showing that the alleged conflict had some adverse effect on the attorney's performance, it will not be presumed that the conflict caused prejudice to the outcome of trial.

## D

A fourth standard applies when there is an "irreconcilable conflict" between the attorney and the defendant. *Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970). Under the *Brown* standard, it must be determined whether the trial court's denial of substitution of counsel in itself constituted a denial of counsel. Three elements are considered: (1) whether the motion to substitute was timely; (2) whether the court's inquiry into the defendant's complaint was adequate, and (3) whether the conflict between defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986). Prejudice is only shown upon meeting all three elements.

A distinction must be made between an "irreconcilable conflict" and errors in representation by counsel. *See Hudson v. Rushen,* 686 F.2d 826, 832 (9th Cir.1982) (noting that the line between "irreconcilable conflict" cases and "ineffective assistance of counsel" cases is "sometimes unclear"). When an "irreconcilable conflict" is alleged, the claimed error rests heavily on the fact that the defendant lost confidence in his attorney, and that the trial court denied the defendant's request to substitute counsel. *See id.* at 831. The claimed error does not necessarily rest on any alleged ineffective representation by counsel. Thus, when the defendant claims that a "irreconcilable conflict" exists, the standard under *Brown* applies. Under *Brown,* the failure on a timely basis to move for substitution in the trial court will be fatal to the claim on appeal. *See United States v. Schaff,* 948 F.2d 501, 505 (9th Cir.1991) (trial court properly denied "untimely motion" for substitution of counsel). In contrast, when the defendant's Sixth Amendment claim rests on the attorney's ineffective representation, the defendant's claim does not depend on

whether the plaintiff moved for substitution at trial.

## II

I acknowledge the differences between the aforementioned standards. If Frazer can prove that his attorney conditionally refused to provide adequate legal representation, it is proper to apply the *per se* presumption under *Cronic*. If Frazer can prove only a conflict of interest, I would not apply the *per se* presumption. When a conflict of interest is alleged, it is proper to apply the "limited presumption" standard in *Cuyler*.

I also believe that the racial slur, if proved, does not require the application of the *per se* presumption under *Cronic*.

### A

The alleged threat by Frazer's counsel that he would be an ineffective lawyer if Frazer did not plead guilty, if true, constitutes a constructive denial of counsel. Once Frazer's court appointed attorney threatened to provide substandard performance, the attorney ceased to function as defense counsel. By threatening to join the state in its prosecution, Frazer's counsel did not adequately represent Frazer's best interests. "[A]n attorney who adopts and acts upon a belief that his client should be convicted 'fail[s] to function in any meaningful sense as the government's adversary.'" *Osborn v. Shillinger,* 861 F.2d 612, 625 (10th Cir.1988) (quoting *Cronic,* 466 U.S. at 666, 104 S.Ct. at 2051). Counsel in such a situation "'represents' the defendant only through a tenuous and unacceptable legal fiction." *Swanson,* 943 F.2d at 1075 (quoting *Osborn v. Shillinger,* 861 F.2d at 629 (quoting *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975))). By failing to function as the state's adversary, an attorney constructively denies counsel to his client.

The alleged threat by Frazer's attorney occurred during a "critical stage" in the criminal proceedings. Therefore, the *per se* presumption of prejudice would apply if the alleged threat is proven true. *Swanson,* 943 F.2d at 1075. (prejudice presumed where constructive denial of counsel occurs during

"critical stage of the criminal proceedings"). An attorney's advice to his client as to whether he should plead guilty or go to trial is undoubtedly made at a "critical stage" in the criminal proceedings.

### B

The alleged threat to provide ineffective legal assistance, if true, also constituted a conflict of interest. A "conflict of interest" typically involves joint representation of multiple defendants. However, a "conflict of interest" also arises when the client's interests collide with his attorney's interests. *See United States v. Swanson,* 943 F.2d at 1075; *United States v. Ellison,* 798 F.2d 1102, 1106–07 (7th Cir.1986). When viewed as a conflict of interest between Frazer and his counsel, the alleged threat should be evaluated under the "limited" presumption of *Cuyler.*

Under the "limited presumption" standard articulated in *Cuyler,* Frazer must first plead and demonstrate that an actual conflict of interest existed between the trial attorney and client. *See United States v. Miskinis,* 966 F.2d at 1268. Assuming that the alleged threat to withhold effective assistance is true, Frazer easily meets this first threshold. We have held that an attorney who joins the state in the effort to attain a conviction labors under a conflict of interest. *Swanson,* 943 F.2d at 1075. In this case, the threat, if true, turned Frazer's counsel into a potential adversary and he ceased being a zealous advocate of Frazer's interests. Counsel's position necessarily conflicted with the defendant's interests. *Compare Morris v. California,* 966 F.2d 448, 455 (9th Cir.1991) (no actual conflict shown because alleged conflict was based on speculation that attorney might have called husband as a witness).

Frazer must also show that the alleged conflict "likely" had an adverse impact on counsel's conduct of the case in his representation of Frazer. If Frazer's allegations are true, Frazer meets this second threshold. Counsel's alleged threat, if true, improperly forced Frazer to choose between his right to trial and his right to counsel, and consequently infringed both rights. *See United States ex rel. Wilcox v. Johnson,* 555 F.2d

115, 120–21 (3rd Cir.1977). Such a "choice" cannot be said to constitute a voluntary waiver of either right by Frazer. If the allegations are true, Frazer has demonstrated that a conflict of interest adversely affected his attorney's performance. He would be entitled to relief.

### C

The issue of the alleged racial epithet cannot be properly posed as follows: "To countenance the type of overt racially charged threat alleged in this case would be to deviate from our national goal of ending racism." *Supra*, at 784. No one asks us to condone the racial slur and none of us do.

Rather, the question we address is whether the racially charged verbal assault constitutes evidence of ineffective assistance of counsel in violation of the Sixth Amendment.

The alleged threat alone, if true, violated the defendant's Sixth Amendment right. This conclusion is compelled whether the alleged threat is viewed as a constructive denial of counsel or as a conflict of interest. In either case, a presumption of prejudice arises, because the alleged threat, if true, indicates that counsel adopted and acted on the belief that the defendant should be convicted. The proof of the racial epithet and insult adds nothing to the analysis.

I believe application of the "irreconcilable conflict" standard announced in *Brown v. Craven*, 424 F.2d at 1170, is the appropriate measure of whether a verbal assault (apart from a threat to provide substandard performance) violates the Sixth Amendment right to counsel. Under *Brown*, the trial court's denial of substitute counsel violates the Sixth Amendment if the defendant shows: (1) that he moved for substitution, (2) that the district court held an inadequate hearing, and (3) that the conflict between Frazer and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. McClendon*, 782 F.2d at 789. If a defendant demonstrates these three factors, the denial of the defendant's motion for substitution of counsel constitutes a denial of assistance of counsel.

I agree with the conclusion that calling one's client a "stupid nigger son of a bitch" is tantamount to a "total lack of communication" preventing an adequate defense. All communications between an attorney and client following such an outburst would be strained. *See United States v. Williams*, 594 F.2d 1258, 1259–60 (9th Cir.1979) (where attorney-client relationship is "stormy one with quarrels, bad language, threats and counter-threats," a "lack of communication" exists that requires court to grant substitution of counsel upon defendant's timely motion).

It is improper to conclude, however, that there was a "irreconcilable conflict" without addressing the other two factors necessary under *Brown*. A defendant must also show he timely moved to substitute his counsel, and that the court held an inadequate hearing on the motion. *See id.* at 1260–61 ("[W]here the request for change of counsel comes during the trial, or on the eve of trial, the Court may, in the exercise of its sound discretion, refuse to delay the trial to obtain new counsel and therefore may reject the request.") This rule balances the defendant's constitutional right to counsel against society's interest in the prompt administration of justice. *Hudson v. Rushen*, 686 F.2d at 831. Also, because personal conflicts between attorney and client usually take place outside the record, the rule requires a petitioner to point to evidence in the record establishing an objection to the conflict.

Frazer alleges that he sought new counsel immediately after the alleged verbal assault and before trial. He claims that his motion was denied without a hearing by the district court. Those allegations, if true, would satisfy the other two factors in the *Brown* standard.