NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 12 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-55939 |
| Plaintiff-Appellee, | D.C. Nos. 2:15-cv-03845-TJH |
| v. | 5:08-cr-00128-TJH-1 |
| CONSTANTINE PETER KALLAS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Submitted May 8, 2020[**]
Pasadena, California

Before: M. SMITH and OWENS, Circuit Judges, and HUMETEWA,[***] District Judge.

Constantine Peter Kallas appeals the district court's summary denial of his

28 U.S.C. § 2255 motion and subsequent Federal Rule of Civil Procedure 59(e)

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Diane J. Humetewa, United States District Judge for the District of Arizona, sitting by designation.

motion, seeking relief from his conviction for ineffective assistance of counsel and juror misconduct.

We have jurisdiction under 28 U.S.C. §§ 2255 and 1291. We review the district court's denial of a § 2255 motion de novo and the failure to hold an evidentiary hearing for abuse of discretion. *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). When a prisoner files a § 2255 motion, the district court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "Evidentiary hearings are particularly appropriate when 'claims raise facts which occurred out of the courtroom and off the record.'" *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (quoting *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989)). We affirm in part and reverse in part, and remand for further proceedings.

1.    Kallas alleges he received ineffective assistance of counsel because his trial counsel, Dean Steward, misinformed him of the terms of a plea offer and the penalties he would face if he proceeded to trial. To prevail on an ineffective assistance claim, Kallas must show that his attorney's advice during the plea bargaining process "fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

Kallas alleges that his trial counsel, Dean Steward, visited him in detention on March 30, 2010, the day before his trial was to begin. Steward informed Kallas of a last-minute plea offer, offering a sentence of 13–15 years. Kallas understood this offer to be the maximum, or near-maximum, sentence he would face if he went to trial. Kallas swore in an affidavit that, had he known that he faced over 29 years in prison, he would have accepted the plea offer.

The government denies that it ever offered Kallas a formal plea deal, "as evidenced by the absence of a plea offer letter or plea agreement (whether in final or draft form in the United States Attorney's Office's case files or in the computer files of the [AUSAs] formerly assigned" to this case. The government made the same representation in opposition to the § 2255 motion, but in a footnote stated that at the time of filing it had not yet reviewed email correspondence to determine whether a plea agreement was offered, and that it was unable to locate email files related to this case from one of the formerly assigned AUSAs.

In response to interrogatories propounded by the government, Steward stated that he discussed the statutory maximum sentence with Kallas before arraignment on the superseding indictment and reviewed the sentencing guidelines with him before trial. But in its discovery requests, the government did not ask what Steward told Kallas that maximum sentence was, and Steward did not recall whether he told Kallas that he could be sentenced to serve the combined total of

3

the applicable statutory maximum terms of imprisonment for each count of conviction. Further, Steward did not recall whether he told Kallas he faced a maximum of 15 years in prison, or whether the government offered a deal of 13–15 years. However, Steward did recall that, "after receiving a plea offer from the prosecution," and "explain[ing] what the government was proposing," Kallas told Steward not to bring him "any future plea offers. I am in this case to win." The government cited portions of these interrogatory responses in their opposition below, but it now claims the documents "were inadvertently not filed with the district court."[1]

Steward's interrogatory responses tend to confirm that there was at least some discussion of a plea offer, despite the government's insistence otherwise. *See Chacon-Palomares*, 208 F.3d at 1160 ("[T]he expansion of the record introduced evidentiary support for Defendant's claims from two new witnesses, which only increased the need for a hearing."). Furthermore, crediting Kallas's allegations, as we must, *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) ("[T]he petitioner . . . must only make specific factual allegations which, if true, would entitle him to relief."), Kallas learned of the plea offer of a

---

[1] We GRANT the government's motion to supplement the record with interrogatory responses. While ordinarily we would not consider evidence that was not before the district court, the supplemental record supports our conclusion that an evidentiary hearing was required here.

maximum or near-maximum sentence on the eve of trial. Considering that Steward's interrogatory responses did not contradict Kallas's affidavit, and that those responses were not before the district court in their entirety, we are not persuaded that Kallas's allegations fail to state a claim or are "palpably incredible" or "patently frivolous" such that an evidentiary hearing was not required. *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985)).

The government argues that, in any event, Kallas fails to show prejudice because his statements that he did not want to hear of future plea deals and was "in this case to win" show that, even with an accurate explanation of the plea offer and maximum sentences, Kallas still would have gone to trial. Kallas has submitted a sworn affidavit to the contrary. If, as Kallas alleges, he made that statement on the eve of trial and the plea offer was what he understood at the time to be the maximum sentence he faced at trial, we are not persuaded that those statements conclusively establish that Kallas would have gone to trial if he had properly understood the risk of substantially more prison time. Accordingly, we conclude that the court abused its discretion by failing to hold an evidentiary hearing. We reverse the district court's order as to this claim and we remand for a hearing.

2. Kallas further alleges trial counsel was ineffective by failing to object to a courtroom closure during voir dire. "The Sixth Amendment guarantees a

5

defendant the right to a public trial, which includes a right to have the public present during voir dire." *United States v. Withers*, 638 F.3d 1055, 1063 (9th Cir. 2011). A total courtroom closure for a non-trivial duration, without first complying with the requirements of Supreme Court precedent, is structural error that "warrant[s] habeas relief without a showing of specific prejudice." *Id.* A trial attorney's failure to object to a courtroom closure may give rise to an ineffective assistance of counsel claim. *Id*. at 1066–67.

Kallas alleges the district court closed the courtroom for the entirety of voir dire, which was a period of several hours on the first day of trial. While the court was interviewing prospective jurors who had expressed an inability to serve for the duration of the trial, the court called a recess, and off the record, ordered spectators to step into the hallway to make room to seat prospective jurors in the courtroom. Kallas alleges 10 people left the courtroom, and Kallas's parents submitted affidavits in which they swore they were "prevented from entering the courtroom because it was closed for jury selection." They stated that they waited in the hallway outside the courtroom for three hours, and in the afternoon, people left the courtroom because the court was in recess. Kallas claims that spectators were not allowed back into the courtroom to view jury selection as space became available.

The government counters that the record contradicts Kallas's claim that the

6

court closed the courtroom because "the district court did not order spectators out of the courtroom," and because a press reporter had been present in the courtroom during voir dire. But the government does not address Kallas's allegation that the district court ordered spectators out of the courtroom *off* the record, which would explain why the trial transcript does not reflect such an order. As to the reporter, Kallas's motion mentions the reporter was present *before* the courtroom was closed. The government fails to point to anything in the record to indicate that the reporter was actually present in the courtroom during voir dire. Apart from the trial transcript, the government cites no evidence to support its contention that the courtroom was not closed.

If true, Kallas's allegations may entitle him to relief. *See id*. at 1066– 68. The government's response and the record developed below do not show that Kallas's claim is "patently frivolous," such that an evidentiary hearing, given this record, was not required. Thus, we reverse the district court's order as to this claim and remand for an evidentiary hearing.

3.      Kallas alleges three instances of juror misconduct were sufficient to impact the verdict: Juror No. 1 fell asleep for lengthy periods on every day of trial; a second juror, a male, spoke to Kallas's parents and stated, "I'm sorry. I know this must be hard for you"; and a third juror, also a male, told Kallas's father in the hallway of the courthouse that two other jurors, who spoke in a foreign language,

7

"don't know what the Hell is going on in the trial."

"[I[n determining whether a hearing must be held" on juror misconduct claims, "the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *United States v. Saya*, 247 F.3d 929, 935 (9th Cir. 2001). "Although it is usually preferable to hold an evidentiary hearing, it is not necessary where the court knows the exact scope and nature of the extraneous information." *Id.* (internal quotations, alterations, and citations omitted).

Crediting Kallas's allegations here, the district court would "know[] the exact scope and nature of the extraneous information." *Id.* Considering the content and seriousness of the alleged misconduct, it was not an abuse of discretion to deny an evidentiary hearing as it pertains to the jurors' statements to Kallas's parents. The expression of sympathy and the statement doubting other jurors' understanding of the proceedings do not contain an indication of actual or implied bias of the sort that we have recognized warrants relief. *See United States v. Olsen*, 704 F.3d 1172, 1191–92 (9th Cir. 2013). Jurors' off-handed statements to family members observing a trial are not the type of serious misconduct that tend to impact the verdict, like conducting outside research or lying during voir dire.

With respect to the sleeping juror, Kallas fails to argue, much less establish, that he suffered prejudice. *See United States v. Olano*, 62 F.3d 1180, 1189 (9th

8

Cir. 1995); *United States v. Morgenstern*, 725 F. App'x 546, 550 (9th Cir. 2018).  Accordingly, we affirm the district court's denial of the motion as it pertains to this claim.

4.      We are not persuaded that this case presents the rare circumstance where reassignment upon remand is warranted.  *See Withers*, 638 F.3d at 1068.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**