880 A.2d 536

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Vinson WASHINGTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 7, 2003.

Decided Aug. 15, 2005.

Christina Allison Swarns, Esq., Philadelphia, for Vinson Washington.

Hugh J. Burns, Esq., Amy Zapp, Esq., Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Chief Justice CAPPY.

This is an appeal in a capital case from the order of the Court of Common Pleas of Philadelphia County denying Appellant, Vinson Washington's petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 et seq. (hereinafter the "PCRA"). For the reasons that follow, we remand this matter for an evidentiary hearing before the PCRA court.

The underlying facts relevant to Appellant's conviction in this case are set forth in this court's opinion on direct appeal at *Commonwealth v. Washington*, 547 Pa. 550, 692 A.2d 1018, 1019–20 (1997). Briefly, the essential facts are that on the evening of December 11, 1993, Appellant and his co-defendant, Rasheed Miller, pulled their car in front of the vehicle driven by Zachary Jackson. Appellant ordered Jackson out of his car at gunpoint and demanded money. Jackson refused, and Appellant shot him in the legs and torso four times. Appellant then retrieved another gun from his car and when Jackson continued to refuse Appellant's demand for money, Appellant fatally shot Jackson one more time in the abdomen. Appellant and his co-defendant fled the scene. Appellant subsequently was arrested on unrelated charges whereupon he confessed to shooting Zachary Jackson.

On November 4, 1994, Appellant was convicted of murder in the first degree for the killing of Zachary Jackson. The jury found the existence of one aggravating circumstance, that the killing occurred during the perpetration of a felony (robbery), 42 Pa.C.S.A. § 9711(d)(6), and the existence of one mitigating circumstance, that Appellant had no significant history of prior criminal convictions, 42 Pa.C.S.A. § 9711(e)(1). After weighing the aggravating and mitigating circumstances found, the jury returned a penalty of death. On direct appeal, this court affirmed the judgment of sentence. *Washington, supra.* Appellant filed a petition for relief under the PCRA in July of 1998. Counsel was appointed and an amended petition was filed in April of 1999. The PCRA petition was supplemented with various affidavits in September, October, and November

of 1999. An evidentiary hearing was held on January 10, 2001. The PCRA court denied relief, and the present appeal was timely filed.

■ The Commonwealth asserts that many, if not all, of Appellant's PCRA claims are procedurally barred because Appellant has failed to demonstrate that his claims are cognizable under the PCRA. Specifically, the Commonwealth argues that Appellant did not properly plead which provisions of the PCRA his claims are being brought under nor did he allege that his claims had not been previously litigated. 42 Pa.C.S. § 9543(a)(2) & (3). As for the claims that were not previously litigated, the Commonwealth asserts those claims are waived and cannot be considered under the umbrella of relaxed waiver. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998). Furthermore, in that Appellant attempts to avoid waiver by raising all of his current claims as ineffectiveness of counsel, all that Appellant does in that regard is utter a boilerplate assertion that previous counsel were ineffective, which the Commonwealth argues is insufficient to warrant this court's review of the claims.

The Commonwealth's assertions, although well considered, do not convince this court that the inadequacies of the current PCRA filings warrant a conclusion that Appellant's claims are procedurally barred. Through his initial pro se petition, the counseled supplemental and amended petitions, and within the substantive arguments in the supporting briefs, Appellant has adequately pled and presented argument on all of his claims so that the issues currently raised are cognizable under the provisions of the PCRA. 42 Pa.C.S.A. § 9543(a)(2)-(4).

■ Appellant raises eleven claims of error, presenting argument on each claim through layered ineffectiveness. In *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003), this court clarified the law on layered ineffectiveness claims brought under the PCRA and set forth in detail the framework for pleading and proving such claims. When an issue is presented via a layered claim of ineffectiveness, the only viable claim is that related to the most recent counsel, usually,

as in this case, appellate counsel. *Id.* at 1022. In order to preserve a layered claim of ineffectiveness, a petitioner must plead in his PCRA petition that appellate counsel was ineffective for failing to raise the ineffectiveness of all prior counsel. *Id.* A petitioner must then present the claim of ineffectiveness of appellate counsel through the three-pronged test of *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).[1]  *Id.* Because it is a nested claim, in order to establish the first prong of the *Pierce* test as to the performance of appellate counsel, a petitioner is required to demonstrate the ineffectiveness of trial counsel. In other words, a petitioner must establish all three prongs of the *Pierce* test as to trial counsel's ineffectiveness before the question of appellate counsel's ineffectiveness can be addressed. *Id.* at 1022–23.

We recognized in *McGill* that prior caselaw was less than clear on how a PCRA petitioner seeking relief on a layered claim of ineffectiveness is required to plead, present, and prove that claim, so that in cases in which the briefs were filed prior to *McGill*, a remand may be appropriate. *Id.* at 1024. However, since a layered claim of ineffectiveness is typically a nested claim, the focus of the analysis turns on the ineffectiveness of trial counsel. In those cases in which the PCRA petitioner has properly pled and presented argument pursuant to the three-pronged test of *Pierce* on the question of trial counsel ineffectiveness, but failed to raise allegations, which even if accepted as true do not establish entitlement to relief on that underlying claim, there is no reason to remand for development of the claim of appellate counsel ineffectiveness per *McGill*, because the petitioner will never be able to establish entitlement to PCRA relief. *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651 (2003).

In this case, Appellant has pled all of his claims of error through the layer of appellate counsel ineffectiveness merely

1. The *Pierce* test requires a demonstration that (1) the underlying claim of error is of arguable merit; (2) counsel had no reasonable basis for the action or omission in question; and (3) counsel's action or omission caused prejudice to his client such that the outcome of the proceedings would have been different.

by including a boilerplate assertion that prior counsel was ineffective for failing to present any of the current claims on direct appeal. Appellant's brief, however, does not fully meet the criteria set forth in *McGill* for properly pleading, presenting, and proving a claim of appellate counsel ineffectiveness. As Appellant does plead and present argument on each claim in accordance with the three-pronged test of *Pierce* as to trial counsel ineffectiveness, review of these claims is appropriate to determine if Appellant has proven trial counsel ineffectiveness, and if a remand is necessary to allow Appellant the opportunity to comply with *McGill*. With these standards in mind, we turn to a consideration of the substantive claims presented in the current PCRA appeal.

The first claim of error is that trial counsel violated his duty of loyalty to his client by laboring under a conflict of interest that caused him to sabotage his defense of Appellant, thus violating Appellant's right to the effective assistance of counsel. Appellant asserts that trial counsel hated Appellant. In support of this allegation, Appellant relies on a letter trial counsel wrote to a psychiatrist, Dr. John O'Brien, whom counsel had contacted to aid in Appellant's defense. The letter, which included an order directing Dr. O'Brien's admission into the prison to interview Appellant, contained the following information as to Appellant, and a handwritten postscript:

> ... I have attached a news clipping as to Mr. Washington's case which will give you a rough idea of his situation....
>
> ... Mr. Vinson Washington ... denies the murders despite the fact that police have what they believe to be a genuine confession from him as to each of his four homicides.[2] I should also note that the police tell me that Mr. Vinson Washington and his co-defendants had names for each one of those guns that they used in each homicide. For example, one was called Chuckie and another was named after a cartoon character. Another was called the

---

**2.** Only the homicide charges as to the death of Zachary Jackson are at issue in this case.

Joker after the gun that the Joker pulled out to shoot down Batman in the movie Batman. Nice folks huh?

* * * *

I am not sure that either of these gentlemen [3] has such a pathology which would endear him to a jury to render a jury sympathetic to him in anyway. But at least we can give it a try.

P.S. I'm just hoping these two guys have some redeeming qualities—*Washington especially. He may epitomize the banality of evil.*

PCRA exhibit, D–4; *see also,* Appendix to initial Brief of Appellant, Item 30. (Emphasis supplied, footnotes added).

Appellant's argument is that, because trial counsel articulated a strong antipathy towards him, counsel's performance at trial was driven by his distaste, causing him to act in a manner contrary to Appellant's best interests. In support of the assertion that trial counsel's attitude about Appellant detrimentally influenced trial counsel's performance, Appellant argues that trial counsel was deficient in his obligation as an advocate by failing to properly investigate Appellant's life history and provide that information to the expert witnesses called on Appellant's behalf, and in failing to adequately prepare the testimony of the expert witnesses. Trial counsel also is found wanting in his advocacy for failing to object to improper remarks made by the prosecution, misleading jury instructions, and the introduction of prejudicial testimony.[4] Appellant asserts that the multiple errors committed by trial counsel were a direct result of his hostility towards Appellant and that the effect of these errors was to deprive Appellant of his Sixth Amendment right to effective counsel. Appellant cites to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) for the Sixth Amendment guarantee of a duty of loyalty. Relying primarily on *Fisher v. Gibson,* 282 F.3d 1283 (10th Cir.2002) and *Frazer v. United*

---

**3.** The other "gentleman" was also a client of trial counsel in a matter unrelated to Appellant, who was also being interviewed by Dr. O'Brien.

**4.** These specific allegations of acts or omissions on the part of trial counsel also form the basis for independently raised claims of error.

*States,* 18 F.3d 778 (9th Cir.1994), Appellant argues that when trial counsel acts with animosity towards his client, his performance must be scrutinized by a more critical eye, and since the effect of this type of corrupting influence on counsel's performance is difficult to measure, prejudice must be presumed.

The Commonwealth responds by first asserting waiver of this claim as it was not raised on direct appeal.[5] On the merits, the Commonwealth strenuously disputes the allegations of a breach of loyalty and dismisses the arguments as an attempt to slander trial counsel. In contrast to Appellant's assertions, the Commonwealth relies upon the trial record to demonstrate that trial counsel vigorously represented the interests of Appellant throughout the course of the trial by extensive cross-examination of key witnesses and legal argument as to the validity of Appellant's confession and the deficiencies of the prosecution's evidence. The Commonwealth asserts that the cases relied upon by Appellant share no resemblance to the circumstances of Appellant's trial in any form and that a new trial is not warranted.

Before discussing the cases relied upon by Appellant, we believe it is important to review *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), wherein the United States Supreme Court discussed the nature of the personal relationship between an accused and his attorney within the context of a Sixth Amendment claim. In *Morris,* the accused was represented by the Office of the Public Defender. Prior to trial, a different attorney from the Office took over the case due to the emergency hospitalization of the first attorney. The defendant objected to the change in counsel because he had a strong relationship with the first attorney and did not want to change counsel. The change in counsel also was objected to on the basis of insufficient time to prepare for trial; the defendant asserted that the second attorney would not be prepared to take over his defense as the change took

---

**5.** In the discussion above regarding layered claims of ineffectiveness it was explained that pursuant to *McGill,* this claim, which was raised in the PCRA petition as one of ineffectiveness of trial and appellate counsel, is not waived, and is properly before the court.

place a mere six days prior to trial. The second attorney assured the defendant, and the trial court, that he was sufficiently prepared and competent to proceed.[6] The defendant was less than cooperative with his second attorney. The defendant was convicted, and on appeal, he asserted a deprivation of his Sixth Amendment right to counsel as he was denied a continuance until the availability of his first attorney and, therefore, was deprived of a meaningful relationship with his trial counsel.

The state courts rejected this claim; however, the defendant was successful in convincing the Ninth Circuit on this point, and temporarily obtained an order granting a new trial. *Slappy v. Morris*, 649 F.2d 718 (9th Cir.1981). The United States Supreme Court reversed. The Court held that there was no Sixth Amendment violation when trial counsel was fully prepared and ready for trial. As for the concept of a meaningful relationship, the Court soundly rejected the conclusion of the Court of Appeals:

> The Court of Appeals' conclusion that the Sixth Amendment right to counsel "would be without substance if it did not include the right to a *meaningful attorney-client relationship,*" 649 F.2d at 720 (emphasis added), is without basis in the law. No authority was cited for this novel ingredient of the Sixth Amendment guarantee of counsel, and of course none could be. No court could possibly guarantee that a defendant will develop the kind of rapport with his attorney—privately retained or provided by the public—that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel. Accordingly, we reject the claim that the Sixth Amendment guarantees a "meaningful relationship" between an accused and his counsel.

*Morris*, 461 U.S. at 13–14, 103 S.Ct. 1610.

*Morris* provides an excellent starting point for consideration of Appellant's contention that, because trial counsel

6. The second attorney was a senior trial attorney in the Office of the Public Defender. He testified to thoroughly reviewing the hearing transcripts and investigative reports assembled by his predecessor and interviewing the defendant twice before the commencement of trial. *Morris*, 461 U.S. at 5, 103 S.Ct. 1610.

hated Appellant, counsel breached his duty of loyalty. Appellant would have us read the phrase "duty of loyalty" from the decision in *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052 as creating a Sixth Amendment obligation upon counsel to establish a positive rapport with his client. *Strickland* established the bedrock upon which all Sixth Amendment claims of ineffectiveness of counsel are measured. In discussing the obligations of counsel within an adversarial criminal setting the Court highlighted the responsibility of counsel to assist his client in obtaining a fair trial and avoid conflicts of interest. 466 U.S. at 692, 104 S.Ct. 2052. The phrase "duty of loyalty" appears in the context of examining counsel's primary obligation to his own individual client. *Id.* The duty of loyalty is the obligation of counsel to avoid actual conflicts of interest that would adversely affect his ability to perform on behalf of his client. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The duty of loyalty an attorney owes his client does not encompass an interpersonal relationship. The Sixth Amendment provides effective assistance of counsel to ensure a fair trial, one in which the prosecution's case is subject to adversarial testing so that the outcome is reliable. *Strickland*, 466 U.S. at 685–86, 104 S.Ct. 2052. The Sixth Amendment does not govern the feelings that flow between an attorney and his client. *Morris.* Accordingly, to establish a breach of the duty of loyalty an attorney owes his client, there must be a showing of an actual conflict of interest that adversely affected the outcome of the case, not merely a showing that counsel did not like his client.

Having set forth a working understanding of what a duty of loyalty means in the Sixth Amendment arena, we now consider Appellant's assertion that the decisions in *Frazer* and *Fisher* mandate that, when counsel fails in his obligation to an accused by breaching the duty of loyalty because of personal animosity towards the client, prejudice must be presumed.

Frazer was charged with fifteen counts of bank robbery before the federal district court in California. In a discussion with his court appointed attorney prior to trial, counsel called Frazer "a stupid nigger son of a bitch" and expressed his

personal opinion that Frazer should be put in prison for life. *Frazer,* 18 F.3d at 780. Trial counsel further warned Frazer that if he insisted on going to trial, counsel intended to be "very ineffective." *Id.* Frazer waived his right to a jury trial, and the matter proceeded on stipulated facts; he was convicted of eight counts of robbery and sentenced to twenty years in prison. Frazer appealed, alleging a deprivation of the right to effective counsel given the racial bias of his appointed trial attorney. The District Court denied the allegations without an evidentiary hearing, finding the claim to be unsupported by any factual evidence. The appellate court reversed and remanded for an evidentiary hearing. The court stated that if the facts as alleged were true, then it would render the nature of the attorney-client relationship so defective that a new trial would be required. *Id.* at 784.

*Fisher* presented a similar scenario. In that case, Fisher was accused of murder following a homosexual encounter with the victim. 282 F.3d at 1287. Fisher had a potential alibi. The court appointed attorney failed to investigate the potential alibi or any other relevant information regarding the case. *Id.* at 1294–98. In fact, it appeared from the trial record that counsel had done absolutely no preparation for trial. *Id.* Additionally, trial counsel admitted in an affidavit prepared post-trial that he personally abhorred homosexuals and that he believed his personal feelings affected his representation of Fisher. *Id.* at 1298. After a thorough consideration of trial counsel's performance the court found:

> In sum, [trial counsel's] performance fell below objectively reasonable standards of professional attorney conduct. Counsel was deficient for failing to adequately investigate; failing through apparent ineptitude to act as a reasonably diligent and professional advocate; failing through his hostility to his client and his client's interests, and his apparent sympathy and assistance for the state's case, to act as his client's loyal advocate; failing to advance any defense theory, even that of holding the state to its burden of proof; and, under the circumstances, failing to make a closing argument.

*Id.* at 1307. Thus, finding arguable merit to the claim of a deprivation of effective representation, the court went on to consider the question of prejudice and concluded that under the circumstances of this case, there was a reasonable probability that the outcome of the trial would have been different if Fisher had been represented by adequate counsel.

A fair reading of *Frazer* and *Fisher* supports Appellant's proposition that a deficient relationship between an attorney and his client may effect a breach in the duty of loyalty owing from attorney to client and thereby cause a deprivation of adequate counsel. These cases do not, however, go so far as to require that when a lawyer-client relationship displays hostility between the parties raising a potential claim of inadequate representation, that the performance of counsel in those situations will be scrutinized with a more critical eye than other claims of ineffectiveness arising in the Sixth Amendment context. In *Frazer*, although the opinion directing remand noted the strong likelihood of prejudice, it did not relieve the lower court of the responsibility to find prejudice if an evidentiary hearing supported the factual allegations. 18 F.3d at 784. Likewise, in *Fisher*, the court made a specific finding of prejudice. 282 F.3d at 1307. Thus, Appellant's contention that upon proof of animosity between an attorney and client, prejudice will be presumed is rejected.

▋ To date, this court has not addressed a claim of ineffectiveness of counsel in the context of a breach of the duty of loyalty premised upon hostility between an attorney and client. Although we do not accept Appellant's interpretation of the duty of loyalty owed from counsel to a client, nor his related assertion that the breach of that duty of loyalty would constitute per se prejudice, we do acknowledge that a claim of this nature is cognizable under the Sixth Amendment. An allegation of ineffectiveness put forth in this manner is disturbing as it asserts a total disintegration of the function of trial counsel, implying a violation of the ethical standards of the profession, a dereliction of counsel's duty to the court, and a profound failure to the client. The constitutional right to counsel in a criminal proceeding is essential to the basic

guarantee of a fair trial in our adversarial system of justice. *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Thus, we agree that if counsel abrogates his obligation to his client because of personal animosity so that the accused is deprived of his right to a fair trial, such action will support a claim for a violation of the Sixth Amendment. Such a claim however, must be established within the confines of the recognized test for ineffectiveness. *Pierce, supra.*

We reiterate, to establish a deprivation under the Sixth Amendment on his current claim, Appellant must show a direct connection between the animosity expressed by counsel and the actions of counsel taken on behalf of Appellant. *Frazer; Fisher.* Appellant must also show that he suffered prejudice so that, but for the actions of counsel, the outcome of the matter would have been different. *Pierce,* 527 A.2d at 976. The Sixth Amendment does not require a meaningful relationship between an attorney and a client; there is no obligation for an attorney to befriend and engage in an interpersonal relationship with his client as a prerequisite to acting as an effective lawyer. *See Morris.* The Sixth Amendment fosters an attorney-client relationship allowing for the free exchange of communications in an atmosphere of trust and confidence so that decisions can be reached and counsel may act in a manner reasonably designed to effectuate his client's best interests. Merely alleging that "my lawyer doesn't like me," would not be sufficient to require further consideration of a Sixth Amendment violation; however, in this case, because of the handwritten message by trial counsel depicting Appellant as "the banality of evil," we are presented with more than a simple complaint that "my lawyer doesn't like me." This case raises a perplexing question as to the dynamics of the attorney-client relationship and the impact of that relationship upon counsel's ability to act in a manner designed to effectuate the best interests of his client.

Looking to the specifics of this claim of a breach of the trial counsel's duty of loyalty, Appellant supports his assertion that trial counsel hated him and, acting on those feelings, sabo-

taged his trial so as to secure a conviction and subsequent death sentence, by stringing together his individually-argued allegations of errors allegedly committed by counsel during the course of the trial, and more pointedly, during the penalty phase of the proceedings. Appellant requests a remand to develop a record supporting this claim. In this case, we agree that a remand is warranted. Although an evidentiary hearing was conducted in this matter, that hearing was confined to trial counsel's failure to procure Appellant's juvenile court records containing significant psychological background material and to produce those records for the use of the expert witnesses retained by trial counsel to aid in Appellant's defense of the current criminal charges.[7] The record contains no testimony beyond this one limited issue. To complicate matters further, despite the fact that this question was before the PCRA court, the court's opinion offers no discussion of this ineffectiveness claim. Moreover, because this issue forms the backdrop to all of the ineffectiveness issues raised currently, it is important to resolve this predicate question before evaluating the merits of the remaining issues. Without exploration and a complete evidentiary record focusing on this unusual argument, full and fair appellate review of this PCRA appeal is severely handicapped.

Accordingly, this case is remanded to the PCRA court for an evidentiary hearing on the claim that trial counsel breached his duty of loyalty to Appellant because of personal feelings of hostility that counsel harbored and that the breach caused trial counsel to render ineffective assistance, thus depriving Appellant of a fair trial.[8] The PCRA court shall hold the

7. During the evidentiary hearing in the PCRA court trial counsel was confronted with the letter to Dr. O'Brien that Appellant uses now as the basis for his assertion that trial counsel was motivated by personal hatred to breach his duty of loyalty to Appellant; beyond acknowledging the provenance of the letter, the issue of trial counsel's animosity towards Appellant and the impact of those feelings on his duty of loyalty to his client was not explored. (See, Hearing Transcript of 1/1/0/2001 at 28).

8. The PCRA court is not limited by the order on remand, but shall exercise its discretion and consider any other claims raised in the PCRA that are impacted by the predicate ineffectiveness issue discussed here-

hearing and issue an opinion on this question within 120 days of receiving this court's directive. The Prothonotary of the Supreme Court will then establish a briefing schedule, and the parties are directed to file supplemental briefs after they receive the PCRA court's opinion. In order to facilitate our disposition of this matter after completion of the evidentiary hearing, we further direct Appellant to supplement his current brief by including argument on each issue, as necessary, to bring his appeal in compliance with the dictates of *McGill.* Appellee shall have the opportunity to file a supplemental reply brief.

Jurisdiction is retained.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE files a concurring and dissenting opinion in which JUSTICE EAKIN joins.

Justice SAYLOR, concurring.

I join the majority opinion, subject to the following thoughts.

First, I respectfully disagree with the majority's decision to dismiss completely the possibility of *per se* prejudice resulting from the alleged deleterious relationship between trial counsel and Appellant. *See* Majority Opinion, *Op.* at 545. The majority acknowledges that Appellant's claim amounts to the averment of "a total disintegration of the function of trial counsel." *Id.* Since I am unable to discern a relevant distinction between such a state of affairs and the actual or constructive denial of counsel that serves as one threshold for presumed prejudice under United States Supreme Court precedent, *see, e.g., Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), I believe that the decision as to whether or not prejudice should be presumed should proceed from the fact finding on remand.

in, particularly where further development of those issues at an evidentiary hearing will facilitate this court's review. *See,* Pa.R.Cr.P. 908.

Second, while I support the majority's decision to remand, it seems to me that there are potential disadvantages and inefficiencies in deferring a determination concerning whether Appellant's other claims warrant a hearing and fact finding by the PCRA court and/or leaving it to the discretion of the PCRA court which additional claims will be developed. *See* Majority Opinion, *op.* at 546, n. 8. For example, I believe that Appellant's evidentiary presentation concerning prejudice associated with the antipathy claim will likely overlap substantially with the development of Appellant's claim that trial counsel failed to adequately investigate and present a case for mitigation in the penalty phase.[1] Moreover, although there appears to me to be a widening divergence in the opinions concerning whether and under what circumstances a capital, post-conviction petitioner is entitled to a hearing on such claims, my position in these cases remains that a hearing is implicated where a petitioner's evidentiary proffer, if believed, would undermine confidence in the verdict. This position is grounded in cases such as *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999), and *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717 (2000), which, although they are clearly being undercut in terms of their direction in requiring credibility determinations by post-conviction courts, have not yet been expressly overruled by the Court.[2]

As another example, Appellant also presents a fairly potent claim that trial counsel blundered through the penalty-phase closing argumentation, *inter alia*, admonishing the jurors that their verdict was of no import since another sentence of death

---

1. In its opinion, the PCRA court mistakenly indicated that it had afforded an evidentiary hearing on the mitigation-related claim generally, *See* PCRA Court Opinion, *op.* at 539, an assertion which is contradicted by the record. *See* N.T., October 1, 2000, at 2–5; N.T., October 10, 2001, at 3–5, 86–87. As the majority notes, the hearing was closely confined to one aspect of that claim, namely, the allegation of deficient stewardship connected with the failure to procure Appellant's juvenile record. *See id.*

2. It seems also worth noting that, as one central justification for its recent revamping of the scheme for review of claims of ineffective assistance of counsel, the Court stressed the importance of the development of such claims on an evidentiary record. *See Commonwealth v. Grant*, 572 Pa. 48, 65–68, 813 A.2d 726, 737–38 (2002).

already had been imposed upon Appellant relative to another killing, and essentially goading them in the direction of returning a second death sentence. This noted aspect of the claim is supported by the following passage from the transcript, reflecting counsel's initial statement to the jury in the closing argument:

[THE COURT]: If you're ready to proceed you may.

[COUNSEL]: I am.

He's going to die. He's going to die because he already has the death sentence. Do you want to give him another death sentence? Go ahead. It won't matter.

N.T., December 6, 1994, at 50. Without entertaining evidence on this claim, the PCRA court found it "obvious that this was a trial strategy designed to effectuate the defendant's interest." PCRA Court Opinion, *op.* at 540.

While I readily agree with the PCRA court that it is apparent that counsel's remarks were grounded in some strategy, the constitutional test is one of reasonableness. *See Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987). Thus, the court was bound to assess whether remarks by capital defense counsel that expressly diminish the sentencing jurors' sense of responsibility connected with their decision whether or not to return a sentence of death could be justified as a *reasonable* strategy designed to effectuate the client's interests. *See id.* The PCRA court, however, made no such determination.

For my part, I have great difficulty in apprehending how a reviewing court could find that a defense strategy which expressly removes responsibility from jurors via the indication that their verdict "won't matter," and suggests a nonchalant attitude on the part of the defense with the indication "go ahead," could in any sense or circumstance be deemed a reasonable one. *See generally Caldwell v. Mississippi*, 472 U.S. 320, 328–29, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) (holding that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining

the appropriateness of the defendant's death rests elsewhere on it").[3]

Based on the above, and left to my own devices, I would explicitly widen the remand mandate to encompass, at least, a requirement of a hearing regarding the above-noted claims independent of the antipathy aspect.

Justice CASTILLE, concurring in part and dissenting in part.

I join the Majority Opinion's learned explication of the governing law in this area, but because I do not believe that appellant is entitled to a remand for another evidentiary hearing on the basis of the proffer forwarded here, I respectfully dissent from its application of that law.

The Majority does not reach the merits of any of appellant's eleven boilerplate claims of "layered" ineffective assistance of counsel because it concludes that one of those claims—a claim deriving from an assertion that trial counsel breached his Sixth Amendment "duty of loyalty" to his client—is a "predicate" for the others and warrants the grant of another evidentiary hearing. This claim is presented by current counsel in hyperbolic terms which are more appropriate for pulp fiction than a legal pleading. The actual "factual" basis for the breach of loyalty claim is a letter that trial counsel wrote to a prospective defense psychiatric witness at the pre-trial stage, in which counsel stated that he hoped that appellant had "some redeeming qualities," but feared that appellant "may epitomize the banality of evil." This no doubt is a fear shared, if not often expressed or committed to writing, by many lawyers.

3. The PCRA court also indicated that, since the admission into evidence of the fact of the prior death sentence by the Commonwealth was proper, Appellant could not establish the prejudice necessary to prevail on this claim. See PCRA Court Opinion, op. at 540. The district attorney, however, had introduced the fact of the other sentence onto the record for an appropriate purpose and in its appropriate context, i.e., to establish a statutory aggravating circumstance. See 42 Pa.C.S. § 9711(d)(10). The prosecutor was in no way permitted to do, and did not do, what trial counsel succeeded in doing, which was to tell the jurors that the prior sentence rendered their own verdict superfluous.

To appellant, counsel's expressed fear somehow reveals a nefarious plot to railroad him. Appellant thus leaps to the conclusion that the "banality of evil" reference, which invokes the well-known subtitle of Hannah Arendt's literary account of the Adolph Eichmann trial,[1] proves that trial counsel "hated" him. In an even greater leap in logic, appellant then declares that counsel's hatred "treacherously" led him to seek to undermine the defense so as to ensure a verdict of first degree murder and a death sentence. Appellant further declares that the litany of other deficiencies he has now belatedly discovered concerning counsel's trial performance prove that counsel deliberately undertook to "sabotage" his defense, because of his animus.

I agree with the Majority that a "duty of loyalty" claim of this sort is governed by the actual Sixth Amendment test for counsel ineffectiveness set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rather than a diluted test that would "presume" prejudice from belatedly-discovered evidence that an attorney supposedly disliked, or even "hated" his client. Thus, I join the Majority in its recognition: that the Sixth Amendment does not establish a right to a "meaningful" or "interpersonal" relationship between an accused and his counsel; that in order to sustain an ineffectiveness claim premised upon a breach of the "duty of loyalty," the accused must show an actual conflict of interest that adversely affected the outcome of the case; and that prejudice cannot be presumed in this area.

Notwithstanding the Majority's recognition that mere discord or dislike between counsel and client is no basis for a Sixth Amendment claim under *Strickland*, it remands for a hearing on just such a claim, on the theory that it is the predicate for appellant's actual claims of deficient performance. I respectfully disagree that this overwrought, bald proffer entitles appellant to an evidentiary hearing so that he may explore counsel's reference to Arendt's subtitle. It is notable that, although appellant has prepared a lengthy Ap-

---

**1.** Hannah Arendt, *Eichmann in Jerusalem: A Report on the Banality of Evil.*

pendix which contains numerous "declarations" from witnesses, he includes no proffer from trial counsel or direct appeal counsel with respect to this claim. Instead, appellant's "case" against trial counsel is entirely a function of bringing his lawyer's imagination to bear upon counsel's letter. The Majority's remand essentially allows appellant to engage in a fishing expedition with trial counsel, in the hopes that he might find something to substantiate what is at present merely rank, reckless and implausible speculation against another member of the Bar.

If counsel had made this reference to his client during his examination of a witness at trial, or in remarks to the jury, appellant's claim might warrant a hearing. When such a remark is made privately to a prospective defense professional witness, however, it simply does not warrant the Majority's current assumption—as a matter of law—that the attorney must have deliberately sought to "sabotage" the defense. Lawyers are not required to have even an iota of affection for their clients in order to perform competently; indeed, if that were a requirement, many criminal defendants would be hard-pressed to secure adequate representation. Persons working in the criminal justice system, and particularly those working on the most serious of cases, may perforce become somewhat jaded. In this day and age, where merely robbing and shooting a person are not enough, but a gratuitous coup de grace is too often delivered, it is not surprising to think of the increasing banality of such evil acts. But the mere fact that a lawyer perceives this fact, and privately gives expression to the perception, does not prove that attorney's "disloyalty," much less does it prove "disloyalty" to the extent that counsel should be presumed to have ignored his professional responsibilities and deliberately sought to "sabotage" his client's case. Appellant has leveled a very serious charge of professional misconduct here, and there should be some support for the charge beyond fevered speculation before an evidentiary hearing is awarded.

More fundamentally, I disagree with the Majority's easy acceptance of appellant's theory because it is not a distinct

legal claim at all, much less a predicate or "backdrop" claim that must be resolved before this Court can proceed to appellant's actual claims. A lawyer's animosity toward his client, standing alone, is no basis for any collateral attack: as the Majority recognizes in setting forth the parameters for review, whether counsel was ineffective depends upon his **actual** performance, not his subjective beliefs or the "political correctness" of his correspondence. Nor is the purpose of PCRA evidentiary hearings to chastise lawyers for their impolitic commentary. Here, counsel committed something to writing which perhaps was flippant and ill-conceived, but he did so in a letter to a prospective defense witness. The fact of counsel's letter suggests **nothing** concerning counsel's preparation for or performance at trial. The Majority, thus, gets it backward: it is appellant's actual claims that are the "backdrop" for his collateral attack; the question of counsel's supposed "reasons" for trying the case as he did are a matter we need not reach unless one or more of those predicate claims prove to have arguable merit. No such finding has been made here. And so, I fear the Majority has been led astray by appellant's exaggerations; the remand in this case is in my mind an overreaction to isolated commentary which may well prove to be entirely unrelated to, and unsupportive of, appellant's actual claims.

Justice EAKIN joins this concurring and dissenting opinion.