# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  56301-1-II |
| Respondent, | |
| v. | |
| GORDON ROBERT HAMMOCK, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Gordon R. Hammock appeals his judgment and sentence following a resentencing hearing to vacate his conviction for unlawful possession of a controlled substance pursuant to *State v. Blake*.[1]  After the vacation of his possession of a controlled substance conviction, Hammock's offender score was re-calculated.  He was sentenced at the high end of the standard sentencing range based on his new offender score.  The sentencing court also re-imposed $18,510 in attorney fees for court-appointed counsel and costs and community custody supervision fees.

Hammock argues that the sentencing court erred when it (1) imposed discretionary legal financial obligations (LFOs) for attorney fees and costs and community custody supervision fees, (2) denied appointment of an expert to pursue mitigating evidence of diminished capacity, (3) failed to inquire into a conflict between Hammock and his counsel,  and (4) violated the appearance

---

[1] *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021) (holding that convictions for possession of a controlled substance under RCW 69.50.4013 are constitutionally void).

of fairness doctrine. Hammock also argues that a new sentencing hearing with a new judge is required.

We hold that the sentencing court erred in imposing discretionary LFOs. We also hold that the sentencing court did not err by not appointing an expert to explore diminished capacity for sentencing purposes, did not err by not inquiring into Hammock's alleged conflict with counsel, and did not violate the appearance of fairness doctrine. Therefore, we reverse the sentencing court's imposition of court-appointed counsel and community custody supervision fees, remand the attorney fees issue to the sentencing court to conduct a proper inquiry of Hammock's financial circumstances and to strike the community custody supervision fees, and affirm the remainder of Hammock's judgment and sentence.

FACTS

In 2007, the State charged Hammock with first degree murder, first degree unlawful possession of a firearm, possession of a controlled substance—methamphetamine, attempted intimidating a witness, and unlawful use of drug paraphernalia. Hammock's first degree murder charge included a deadly weapon sentencing enhancement. The State also alleged the aggravating factor that the victim was "particularly vulnerable or incapable of resistance." Clerk's Papers (CP) at 75.

In an omnibus order prior to trial, Hammock gave notice that he potentially intended to pursue a diminished capacity defense at trial. Based on the information in the omnibus order, the State moved to have Hammock evaluated by Western State Hospital (WSH) for diminished capacity to determine whether Hammock's use of methamphetamine during his commission of the crimes would have diminished his ability to form the requisite intent for the first degree murder

charge. Hammock's counsel moved for an order authorizing the expert witness services of Dr. Harold Hall at public expense, stating that the services were for "medical expert review" and "[t]he services [were] necessary as [Hammock had] asserted the defense of diminished capacity." CP at 273. The trial court granted both motions.

Two WSH evaluators interviewed Hammock. After the interview, the evaluators submitted a 23-page forensic mental health report, which stated, in relevant part:

> It is our opinion, based upon our review of the available data, that at the time of the alleged offenses Mr. Hammock demonstrated numerous examples of goal-directed purposeful behaviors, despite his use of methamphetamines and "whip-its" throughout the time of the alleged offenses. It is our forensic opinion to a reasonable degree of medical certainty, that at the time of the alleged offenses Mr. Hammock had the *capacity* to act intentionally, to form a mental state of intent, as well as to form a mental state of pre-mediated intent.

CP at 312 (emphasis in original) (boldface omitted).

The evaluators also noted that Hammock lacked "any active symptoms of a major mental illness" and that "[h]is antisocial character pathology (psychopathy) and substance abuse are viewed as his most significant risk factors" for reoffending and for aggressive behavior. CP at 313.

Hammock's final witness list filed prior to trial did not include Dr. Hall. And Hammock did not pursue a diminished capacity defense at trial.

A jury found Hammock guilty on all charges, as well as on the dangerous weapon enhancement and aggravating factor allegation. The trial court sentenced Hammock in February 2008. Hammock's criminal history included two counts of second degree possession of stolen property in 2005, but the 2006 judgment and sentence for the two second degree possession of stolen property convictions showed that the two crimes were counted as only one point for

sentencing purposes. The 2006 judgment and sentence did not include any finding of the fact that the two crimes were the same criminal conduct.

The trial court sentenced Hammock to a total of 596 months of confinement, which included 48 months for the deadly weapon enhancement. Hammock's sentence was based on an offender score of 9 for his first degree murder conviction. His remaining convictions had offender scores of 8. The trial court also ordered him to pay $18,510 in attorney fees for court-appointed counsel and costs and to pay community custody supervision fees. We affirmed Hammock's convictions on appeal.[2]

In 2021, following our Supreme Court's holding in *Blake*, Hammock filed a CrR 7.8 motion to vacate his possession of a controlled substance conviction and for resentencing. The sentencing court appointed counsel for Hammock's resentencing and set the resentencing hearing for September 1. In advance of the hearing, the State submitted a resentencing memorandum which detailed Hammock's criminal history and recommended an exceptional upward sentence of 596 months.

During the resentencing hearing, the court inquired into Hammock's criminal history for purposes of the offender score calculation:

> Does that calculation of offender score, how does that treat the two possession of stolen properties from the [sic] Thurston County? Because I took a look at that case; it looks to me like those are separate conduct. And not necessarily factually separate conduct, but what appears to me from that case is that the parties reached an agreement, which targeted a particular range. Because the charges don't

---

[2] *State v. Hammock*, 154 Wn. App. 630, 640, 226 P.3d 154 (published in part), *review denied*, 169 Wn.2d 1013 (2010). In his appeal, Hammock argued that there was insufficient evidence to support his conviction of first degree unlawful possession of a firearm. *Id*. at 634. Hammock also argued that references made to his criminal history during the trial denied him a fair trial and necessitated a new trial. *Hammock*, No. 37389-1-II, slip op. (unpublished portion) at 10.

necessarily reflect that [those are] the facts in that case. And it appears to me, based on my experience, that the parties came up with a plea agreement to find a range. And it appears that the Court treated those as two courses of conduct, and it was an [Alford] Plea which further complicates things. But it does appear to me at least that that was the intent of the parties . . . to target a particular range.

Verbatim Rep. of Proc. (VRP) (Sept. 1, 2021) at 4.

Counsel for both the State and Hammock stated it was their understanding that the two possession of stolen property convictions had been counted as one, though neither had any information regarding the previous trial court's intent. The sentencing court requested that the parties clarify whether it was the intent of the parties in the original sentencing to target a specific offender score and sentencing range for Hammock's possession of stolen property convictions. The sentencing court also stated, "I'll defer [to] the parties if you want to agree to the offender score of 8 based on our discussions." VRP (Sept. 1, 2021) at 6.

Later in the hearing, Hammock's counsel made a request on behalf of Hammock:

[B]ased on my conversations with [Hammock] in his letter to me, he wanted me to request, first of all, a set-over sentencing based on a request to have the Court appoint an expert to argue diminished capacity at the time of the offense. I believe that there was some argument to that effect during trial and/or at sentencing, but he indicated that he wanted me to make that question; and I indicated to him I would make that request to the court.

VRP (Sept. 1, 2021) at 7.

The sentencing court denied Hammock's request to appoint an expert to explore diminished capacity. The sentencing court stated:

[T]hat's a defense, it's a trial defense. It was not pursued at trial. It may or may not have been explored but it was not pursued at trial. The trial ended, the verdicts came back. The verdicts are sound; there's nothing that validly attacks the verdicts and the judgment has been final for over 10 years. So I'm not going to reopen a trial issue. And I'm not finding that there's been any offer of proof or anything in

the record that would indicate that it is an appropriate sentencing issue. So I'm denying the request to appoint an expert.

VRP (Sept. 1, 2021) at 8-9. The sentencing court then granted a continuance to allow the parties to look into the question of Hammock's offender score related to the possession of stolen property convictions in the 2006 judgment and sentence.

On September 13, a month prior to the continued resentencing hearing, Hammock filed a letter with the sentencing court. Hammock wrote, "It is my opinion that the lawyer the court has appointed me . . . is purposefully rendering me with ineffective assistance of counsel." CP at 238. Hammock claimed that his counsel failed to abide by Hammock's "reasonable objectives," "reasonable requests for documents," and failed to "follow[] through on what he [had] informed [Hammock] that he would do." CP at 238. In the letter, Hammock provided a history of his communication with his counsel, which included:

> a) In August, the weeks [sic] of the 22nd, [counsel] received a letter from me informing him of my objectives and my requests. I informed him that I wanted him to file a motion requesting the court to permit and provide the funds to hire a diminished capacity specialist to give testimony at my sentencing. I informed him that I was not prepared to move forward with [the] hearing, and that I wanted him to have my hearing removed from the docket scheduled for September 1s,t [sic] 2021. I informed him that I wanted a copy of my 2008 sentencing transcripts, and a copy of the sentencing memorandums filed in 2008 by the Judge, Prosecutor, and Defense.

> b) Monday August 23rd, 2021, I spoke with [counsel] over the phone, and I informed him that I wanted him to file a motion requesting the court to permit and provide the funds to hire a diminished capacity specialist to give testimony at my sentencing. He did not file a motion or submit a brief as to why the court should grant my motion. He didn't even submit a halfhearted oral argument as to why the court should grant my request.

> . . . .

e) August 25th, 2021, I spoke with [counsel] over the phone, and I informed him that I was not prepared to move forward with [the] hearing, . . . He then informed me that he would contact [the court] and have it removed, but he did not follow through with that. Nevertheless, he knew that I wasn't prepared to move forward on September 1, 2021. So, when the court was extending the hearing to [October 13], 2021 for further review of the record, that is when he should have petitioned the court to set it out farther, but he made no such request.

CP at 238. Hammock then requested that the sentencing court "conduct an evidentiary hearing to substantiate [his] claims of . . . ineffective assistance of counsel." CP at 239. However, Hammock neither requested new counsel nor asked for his counsel to be removed.

At the next hearing, the resentencing court addressed Hammock's letter:

I received a letter from Mr. Hammock dated September 9th and . . . [it] address[es] the issue that Mr. Hammock has raised through counsel prior to this; and that is he is requesting that the Court appoint an expert to explore the issue of diminished capacity.

. . . . I think a little more of a record is appropriate under the circumstances for Mr. Hammock's benefit and the benefit of the record.

This is a resentencing based on an offender score change due to State versus Blake. The scope of the representation of [Hammock's counsel] is resentencing in light of this change in the law. And this doesn't open it up to any resentencing on any issue, especially those issues that could have been brought at the time of the original sentencing. There was a direct appeal of the case and the judgment became final several years ago after that direct appeal.

Mr. Hammock is wanting this Court to utilize this opportunity to allow him to pursue a defense for a sentencing factor that he did not pursue before the judgment became final. Again, I ruled previously that the record does not support the Court appointing such an expert. And the possibility of a diminished capacity defense was initially raised in the omnibus hearing, [a]nd the omnibus order was filed before trial.

Based on that the State moved for a forensic examination and Mr. Hammock was evaluated for diminished capacity by Western State Hospital. According to the January 8th, 2008 report, the doctors who examined Mr. Hammock wrote a 23-page report detailed their process and their findings and determined that he had the capacity to form the requisite intent for the crimes he was eventually tried for.

7

Prior to that report being written [Hammock's counsel] moved for the appointment of an expert. . . . The file also details that [the expert] was paid for the services. So the rational conclusion is that he provided services, including an opinion, and it was not favorable or was considered in light of the potential diminished capacity defense and rejected.

Diminished capacity can [affect] a type of defense put forth and can undermine other defense strategies. So it's logical that either (A), the defense was not there based on the facts, included the State's expert opinion, or (B), that even if a potential defense was there for strategic reasons, the defense did not pursue it.

There's no basis in the record that I'm aware of that would support such a defense or a mitigating factor such that the Court would appoint an expert to explore it.

. . . . [Hammock's counsel] did raise this issue and I did consider it. [Hammock's counsel] has fulfilled his duty to represent Mr. Hammock in the scope of the appointment, which is resentencing based on an offender score calculation. . . . . [Hammock's counsel] did advocate for the Court to appoint an expert as requested by Mr. Hammock. The lack of an offer of proof is not proof of deficient performance.

VRP (Oct. 13, 2021) at 12-15. At the resentencing hearing, the State and Hammock's counsel both confirmed that Hammock's two possession of stolen property convictions had been counted as one point for the purposes of the original sentencing.

The sentencing court vacated Hammock's possession of a controlled substance conviction pursuant to *Blake*. After Hammock's possession conviction was vacated, his new offender score was 8 for his first degree murder conviction and 7 for his remaining convictions. Based on Hammock's new offender score, the standard sentencing range was 370-493 months, and with the 48-month deadly weapon enhancement, the sentencing range increased to 418-541 months. The State requested the sentencing court impose an exceptional sentence of 596 months—Hammock's

original sentence—based on an aggravating factor found by the jury. Hammock's counsel requested a sentence at the "high end at 8 points." VRP (Oct. 13, 2021) at 20.

The sentencing court declined to impose an exceptional sentence upward and, instead, imposed a total confinement of 541 months, a sentence within the standard range, for the purpose of "achieving finality." VRP (Oct. 13, 2021) at 22. Additionally, the sentencing court found that Hammock had "the ability to pay the legal financial obligations for the attorney fees . . . because [Hammock was] in good health [and] he [would] have opportunities in custody to earn money and the money that he earns on his books can and should go towards the attorney fees." VRP (Oct. 13, 2021) at 22-23. The sentencing court also imposed community custody supervision fees. The sentencing court did not inquire into Hammock's financial circumstances before re-imposing the $18,510 in attorney fees for court-appointed counsel and costs and community custody supervision fees. The sentencing court also found Hammock indigent for the purposes of appeal.

Hammock appeals.

ANALYSIS

A.      DISCRETIONARY LEGAL FINANCIAL OBLIGATIONS

1.      Legal Principles

Courts may not impose discretionary costs, including court-appointed attorney fees, without inquiring into the defendants' financial circumstances. RCW 10.01.160(3); *State v. Ramirez*, 191 Wn.2d 732, 746-48, 426 P.3d 714 (2018); *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 155, 381 P.3d 1280 (2016), *review denied*, 188 Wn.2d 1008 (2017). In conducting an individualized inquiry, the record must show that the trial court considered "'important factors'" such as an individual's assets and financial resources, income and monthly living expenses,

incarceration, debts, opportunities for employment, and employment history. *Ramirez*, 191 Wn.2d at 742-44 (quoting *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015)). Additionally, courts should look to GR 34 for guidance, which provides ways a person may prove indigent status for the purpose of seeking filing fee waivers. GR 34; *Ramirez*, 191 Wn.2d at 742. Failure to conduct an inquiry requires remand to the trial court to make the necessary findings. *State v. Gouley*, 19 Wn. App. 2d 185, 207, 494 P.3d 458 (2021), *review denied*, 198 Wn.2d 1041 (2022). We review the adequacy of a trial court's inquiry into a defendant's ability to pay de novo. *Ramirez*, 191 Wn.2d at 742.

RCW 9.94A.703 was recently amended and the court's authority to impose community custody supervision fees has been removed. *See* RCW 9.94A.703; SUBSTITUTE H.B. (S.H.B.) 1818, 67th Leg., Reg. Sess. (Wash. 2022).

2.      Imposition of Discretionary Costs

Hammock argues the sentencing court impermissibly imposed discretionary LFOs. Hammock asserts that because the record shows he is indigent and the sentencing court did not inquire into his ability to pay costs and fees, the attorney fees for court-appointed counsel and costs and community custody supervision fees should be stricken.

a.      Court-appointed attorney fees and costs

The State concedes that the sentencing court impermissibly imposed discretionary LFOs because the court did not inquire into Hammock's ability to pay. However, the State argues remand is required for the sentencing court to conduct an inquiry.

At Hammock's original sentencing in 2008, the trial court ordered him to pay $18,510 in court-appointed attorney fees and costs and to pay community custody supervision fees. At

Hammock's resentencing in 2021, the sentencing court re-imposed the $18,510 for court-appointed attorney fees and costs and the community custody supervision fees. The sentencing court did not conduct any inquiry into Hammock's ability to pay, and instead stated: "Hammock does have the ability to pay the legal financial obligations for the attorney fees . . . because he's in good health, he will have opportunities in custody to earn money." VRP (Oct. 13, 2021) at 22-23. However, the sentencing court then found Hammock indigent for the purposes of this appeal.

The sentencing court erred by imposing the attorney fees for court-appointed counsel because the court did not inquire into Hammock's ability to pay discretionary costs. *Ramirez*, 191 Wn.2d at 748. Accordingly, we reverse the attorney fees and costs for court-appointed counsel and remand to the sentencing court to conduct an individualized inquiry into Hammock's ability to pay.

      b.   Community custody supervision fees

The State asserts that the recent amendment to RCW 9.94A.703 that eliminated community custody supervision fees was not effective until June 9, 2022, after Hammock filed this appeal. Therefore, the State contends, the community supervisions fees were properly imposed. We disagree.

The amendment to RCW 9.94A.703 removed a court's authority to impose community custody supervision fees. *See* RCW 9.94A.703; S.H.B. 1818. Although the statutory amendment eliminating community custody supervision fees was not effective until June 9, 2022, we hold that the statutory amendment applies because Hammock's case was still pending review when the amendment was enacted. *See Ramirez*, 191 Wn.2d at 748-49 (when a precipitating event occurs after the effective date of the statute, the statute applies).

11

Thus, in light of the statutory amendment to RCW 9.94A.703, we reverse and remand the community custody supervision fee issue to the sentencing court to strike the community custody supervision fees.

B.    REFUSAL TO APPOINT EXPERT TO PRESENT MITIGATING EVIDENCE

Hammock argues that the sentencing court erred in denying his request to appoint an expert to evaluate him for diminished capacity, which would potentially justify an exceptional sentence below the standard range. Hammock asserts that we should order a new sentencing hearing where he "may obtain an expert or otherwise present available mitigating evidence and receive the court's meaningful consideration." Br. of Appellant at 23. We disagree.

1.    Legal Principles

A trial court's decision on appointing experts at public expense is reviewed for an abuse of discretion. *State v. Cuthbert*, 154 Wn. App. 318, 326, 225 P.3d 407, *review denied*, 169 Wn.2d 1008 (2010). Mental conditions, not amounting to insanity or diminished capacity, may constitute mitigating factors that support an exceptional sentence below the standard range. *State v. Schloredt*, 97 Wn. App. 789, 802, 987 P.2d 647 (1999). RCW 9.94A.535 provides a non-exclusive list of mitigating factors courts may consider during sentencing. One factor is: "The defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired. Voluntary use of drugs or alcohol is excluded." RCW 9.94A.535(1)(e).

In postconviction proceedings, defendants do not possess a constitutional right to an investigator's assistance. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 390, 972 P.2d 1250 (1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 115 L. Ed. 2d 640

(1991)). Furthermore, a defendant is limited to discovery "only to the extent [he or she] can show good cause to believe the discovery would prove entitlement to relief." *Id.* at 391.

2.      Appointment of Expert at Sentencing

Hammock did not request the sentencing court impose an exceptional sentence below the standard sentencing range. The sentencing court sentenced Hammock within the standard range based on his offender score. On appeal, Hammock does not argue that his offender score was miscalculated or that the sentence range was incorrect. Further, Hammock does not claim he possessed evidence that the sentencing court summarily refused to consider. Instead, Hammock argues that the sentencing court should have appointed an expert to allow him to explore diminished capacity as a mitigating factor for sentencing in the hope that the court might impose an exceptional sentence below the standard range. However, neither Hammock nor his counsel presented any evidence of Hammock's alleged diminished capacity to provide a good cause belief that an expert would be able to prove Hammock would be entitled to a diminished capacity mitigating factor at sentencing. *See id.* at 390-91.

The record does not establish any mental impairment that prevented Hammock from appreciating the wrongfulness of his conduct such that it could constitute a mitigating factor—if anything, the record shows the opposite. *Schloredt*, 97 Wn. App. at 802. In 2008, Hammock was evaluated by two WSH physicians for diminished capacity. The physicians concluded that "Hammock had the capacity to act intentionally, to form a mental state of intent, as well as to form a mental state of pre-mediated intent." CP at 312 (boldface and italics omitted). The sentencing court pointed this out to Hammock, stating, "I'm not finding that there's been any offer of proof or anything in the record that would indicate that [diminished capacity] is an appropriate

sentencing issue. . . . *If Mr. Hammock wishes to explore that further he can do so* but I'm not finding there's a factual basis for me to appoint to an expert." VRP (Sept. 1, 2021) at 9 (emphasis added).

Hammock argues that RCW 9.94A.535(1)(e) *could* apply and an expert is needed to say one way or the other. However, Hammock fails to acknowledge the second clause of RCW 9.94A.535(1)(e), which states, "Voluntary use of drugs or alcohol is excluded." Therefore, even if an appointed expert opined that Hammock was mentally impaired when he committed his crimes as a result of his methamphetamine use, the sentencing court could not have considered it as a mitigating factor because Hammock voluntarily used methamphetamines.

Furthermore, Hammock does not have a right to an expert's assistance in a postconviction proceeding. *Gentry*, 137 Wn.2d at 390. The sentencing court considered Hammock's request, but Hammock could not point to any evidence of his diminished capacity for sentencing purposes. Therefore, we hold the sentencing court did not abuse its discretion when it denied Hammock's request to appoint an expert at public expense.

C.    COURT INQUIRY INTO ATTORNEY-CLIENT CONFLICT

Hammock argues that the sentencing court failed to inquire into an "irreconcilable conflict" between him and his counsel, and that as a result, this court should remand for a new resentencing hearing. Br. of Appellant at 4. We disagree.

1.    Legal Principles

A criminal defendant has a right to effective assistance of counsel. U.S. CONST. amend. VI. The right of effective assistance extends to sentencing hearings. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). "If the relationship between lawyer and client

completely collapses, the refusal to substitute new counsel violates the defendant's Sixth Amendment right to effective assistance of counsel." *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 722, 16 P.3d 1 (2001). However, the Sixth Amendment does not guarantee a criminal defendant the right to his or her preferred counsel or that he or she has a certain "'rapport'" with the attorney. *Id.* at 725 (quoting *Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994)).

"[A] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication." *Id.* at 723. When there has been a motion for new counsel due to irreconcilable conflict, the Sixth Amendment requires an "appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward." *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000). To determine if an irreconcilable conflict exists, courts "consider the extent of the conflict, the adequacy of the inquiry, the timeliness of the motion, and the effect of the conflict on the representation actually provided." *State v. Thompson*, 169 Wn. App. 436, 458, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013).

When there is a total breakdown in communication between client and attorney, or where the attorney-client relationship includes constant quarrels, threats, and counter-threats, there may be an irreconcilable conflict. *See Stenson*, 142 Wn.2d at 724. Courts have found irreconcilable conflict when an attorney verbally assaulted his client with a racially derogatory term and threatened to provide substandard performance if the client exercised his right to go to trial. *Frazer*, 18 F.3d at 783. However, an indigent defendant's "'unilateral falling out'" with an attorney not caused "'by any identifiable objective misconduct by the attorney'" is not an

irreconcilable conflict. *Stenson*, 142 Wn.2d at 725 (quoting *Frazer*, 18 F.3d at 783). Moreover, a defendant's loss of confidence or trust in his or her attorney is not sufficient to substitute counsel. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). Disagreements over defense theories or trial strategy do not constitute an irreconcilable conflict. *Thompson*, 169 Wn. App. at 459.

2.      Court Inquiry

Hammock argues that the sentencing court impermissibly ignored Hammock's complaints about his counsel's failure to provide meaningful assistance and a new sentencing hearing is required so Hammock "has the meaningful assistance of counsel." Br. of Appellant at 36. Although Hammock did not claim below that an irreconcilable conflict existed between him and his counsel, Hammock asserts on appeal that there was an "irreconcilable and obvious" conflict. Br. of Appellant at 25.

Here, Hammock wrote a letter to the sentencing court. Hammock's letter stated, "It is my opinion that the lawyer that the court has appointed me . . . is purposefully rendering me with ineffective assistance of counsel." CP at 238. Hammock claims his counsel did not "follow Mr. Hammock's decisions regarding the scope of representation," "did not provide the court with any sentencing information other than ask for the high end of the standard range," and "did not present any mitigating information." Br. of Appellant at 29-30. Hammock at no point made a request for a new attorney in his letter to the sentencing court nor did he bring a motion for new counsel. Also, in his briefing on appeal, Hammock does not assert ineffective assistance of counsel. Instead, Hammock complained that the sentencing court ignored his complaints and requested that "the court conduct an evidentiary hearing to substantiate [his] claims." CP at 239. Beyond the

"evidentiary hearing," however, it is not clear what Hammock had hoped to achieve with his letter to the sentencing court.

Here, the record does not show any breakdown in communication between Hammock and his counsel. According to Hammock, Hammock communicated with counsel by letter and over telephone in the week leading up to the September 1 hearing. During both the September 1 and October 13 hearings, counsel mentioned conversations he had with Hammock and articulated Hammock's objectives. Furthermore, Hammock had the opportunity to address the sentencing court, and he did not once mention his complaints about counsel. And Hammock never requested new counsel nor asked for his counsel to be removed.

The sentencing court acknowledged receipt of Hammock's letter and observed that Hammock's primary issue was that the court refused to appoint an expert to explore the possibility of diminished capacity as a mitigating sentencing factor. The sentencing court stated, "[Hammock's counsel] has fulfilled his duty to represent Mr. Hammock in the scope of the appointment . . . . [Hammock's counsel] did advocate for the Court to appoint an expert . . . . The lack of an offer of proof is not proof of deficient performance by [Hammock's counsel]." VRP (Oct. 13, 2021) at 14-15. Hammock's dissatisfaction or disagreement with the way in which his counsel advocated for the appointment of an expert does not constitute an irreconcilable conflict. *Thompson*, 169 Wn. App. at 459.

The record does not show any identifiable conduct on the part of counsel to support Hammock's complaints about counsel. Counsel communicated with Hammock, counsel advocated for a sentence within the standard range when the State requested an exceptional sentence above the standard range, and counsel articulated Hammock's requests to the sentencing

court. Therefore, the record does not support a claim of irreconcilable conflict for the sentencing court to inquire into. The sentencing court did not ignore Hammock's complaints about counsel and did not err in not holding an evidentiary hearing based on Hammock's complaints.

D.      APPEARANCE OF FAIRNESS DOCTRINE

Hammock argues the sentencing court violated the appearance of fairness doctrine because it "initiat[ed] its own inquiry into Mr. Hammock's criminal history and engag[ed] in its own fact-finding to encourage a higher offender score." Br. of Appellant at 38. Hammock requests on remand that his case be assigned to a different judge. We disagree.

1.      Legal Principles

"[A] judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). The law requires that a judge both be impartial and appear impartial. *Id.* "The party asserting a violation of the appearance of fairness must show a judge's actual or potential bias." *Id.* "The test for determining whether a judge's impartiality might reasonably be questioned is an objective one that assumes the reasonable person knows and understands all the relevant facts." *West v. Wash. Ass'n of County Offics.*, 162 Wn. App. 120, 137, 252 P.3d 406 (2011). If the record shows that a judge's impartiality might reasonably be questioned, the matter should be remanded to another judge. *Solis-Diaz*, 187 Wn.2d at 540.

2.      Appearance of Fairness

Hammock asserts that the sentencing court "consulted information outside the sentencing record" as it related to two prior convictions for possession of stolen property, "to pursue an increased offender score even though the parties had agreed on the offender score." Br. of

Appellant at 38. Here, the record shows that the sentencing court merely inquired into the calculation of Hammock's offender score based on Hammock's two prior counts for possession of stolen property. The sentencing court did not attempt to pursue an increased offender score; rather, the record shows that the sentencing court only sought to clarify Hammock's criminal history and the intent of a previous trial court.

Hammock argues that in the judgment and sentence that depicts his two possession of stolen property convictions, "the [prior] sentencing court purposefully treated counts one and two . . . as a single offense." Br. of Appellant at 39. However, the judgment and sentence that Hammock cites to actually fails to indicate that the prior trial court intended to treat his possession of stolen property convictions as a single offense. While the two counts at issue are reflected on the same line item, the prior trial court never entered a finding that it considered the two convictions as the same criminal conduct for the purposes of determining the offender score.

Additionally, Hammock fails to show that the judge was actually or potentially biased during the proceedings. *Solis-Diaz*, 187 Wn.2d at 540. The sentencing court never encouraged a particular result. Rather, the sentencing court made observations. It never took "judicial notice" of other proceedings or made "unsolicited efforts to advance the prosecution's case." Br. of Appellant at 42. Moreover, the sentencing court continued the resentencing to allow the parties the opportunity to inquire into the prior sentencing and stated, "I'll defer [to] the parties if you want to agree to the offender score of 8 based on our discussions." VRP (Sept. 1, 2021) at 6. Based on the record on appeal, a reasonable person who knows and understands all the facts would not question the judge's impartiality. *West*, 162 Wn. App. at 137. Therefore, because the judge's impartiality cannot reasonably be questioned, the matter should not be remanded to another judge.

No. 56301-1-II

CONCLUSION

We reverse the sentencing court's imposition of attorney fees for court-appointed counsel and costs and community custody supervision fees. We remand for the sentencing court to conduct an individualized inquiry into Hammock's ability to pay court-appointed attorney fees and costs and to strike the community supervision fees from Hammock's judgment and sentence. We affirm the remainder of Hammock's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Glasgow, C.J.

_____
Price, J.

20